ERIC J. HEIMANN
Wyoming State Bar No. 6-4504
Assistant United States Attorney
District of Wyoming
P.O. Box 668, Cheyenne, WY 82001
(307) 772-2124 * eric.heimann@usdoj.gov

TRAVIS J. KIRCHHEFER
Wyoming State Bar No. 6-4279
Special Assistant United States Attorney
Medicaid Fraud Control Unit
Wyoming Attorney General's Office
2424 Pioneer Avenue, Cheyenne, WY 82002
(307) 7776858 * travis.kirchhefer@wyo.gov

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| Plaintiff, | |
| **v.** | **Case No. 19-CR-171-J** |
| **MATTHEW TY BARRUS,**<br>**GREGORY J. BENNETT, and**<br>**DEVIN E. DUTSON,** | |
| Defendants. | |

## GOVERNMENT'S MOTION TO QUASH

The United States of America, by and through Assistant United States Attorney Eric Heimann and Special Assistant United States Attorney Travis Kirchhefer, hereby requests that subpoenas duces tecum issued by this court in response to ex parte motions filed by the defendants be quashed because (1) these subpoenas are being used improperly to obtain criminal discovery and (2) the subpoenas violate the requirements of Rule 17(c) by demanding production to defense counsel rather than the court. The government further requests that the defendants be required to

file subsequent motions for subpoenas duces tecum in a manner that allows the government to review the request and object prior to issuance. Finally, the government requests that any evidence already provided to the defendants in response to a subpoena duces tecum be given to the court as required by Rule 17(c) and that the government be granted an opportunity to inspect it.

The government consulted with defense counsel and defendants Barrus and Bennett oppose this motion. We do not know the position of defendant Dutson.

## RELEVANT BACKGROUND

Between April 2009 and August 2016, Northwest Wyoming Treatment Center Inc. (NWTC) operated a residential substance abuse treatment program for adolescents in Powell, Wyoming. During this time, defendant Matthew Ty Barrus was NWTC's executive director, defendant Bennett was NWTC's clinical director, and defendant Devin Dutson was employed by NWTC as a therapist.

A significant number of NWTC's substance abuse treatment clients were Wyoming Medicaid beneficiaries. Wyoming Medicaid is a joint federal and state government program that pays for medical care, including certain substance abuse and mental health treatment, for some low-income and medically needy individuals and families in Wyoming. The Wyoming Department of Health funds and administers Wyoming Medicaid for the state of Wyoming. Wyo. Stat. Ann. 42-4-104(a). The U.S. Department of Health and Human Services does the same for the federal government through the Centers for Medicare and Medicaid Services.

In 2015, Wyoming Medicaid audited NWTC, which included a review of patient records specifically provided by NWTC to Medicaid for purposes of the audit. Around the same time, Wyoming Medicaid audited a Medicaid-enrolled mental health provider called Big Horn Basin

Mental Health Group Inc. This company was owned and operated in northwest Wyoming by psychologist Gibson Condie.

Condie was not employed by NWTC and to the government's knowledge did not provide any medical services as part of NWTC's residential substance abuse program, but he had a history with the company and the defendants. Public records show that Condie created NWTC (originally called the Vernon Clegg Group Homes) as a nonprofit corporation in 2000, served as a corporate director until 2008, and remained NWTC's registered agent with the Wyoming Secretary of State until 2015. Wyoming Medicaid records show that Condie enrolled NWTC as a Medicaid provider in September 2008. The government's evidence shows that Condie submitted bills to Wyoming Medicaid for NWTC in exchange for a commission. This business arrangement started no later than April 2009 when NWTC started billing Medicaid for services allegedly provided through its residential substance abuse treatment center until sometime in 2015 when defendant Barrus took over NWTC's billing. The government also understands that Condie mentored the defendants when they were provisionally licensed providers and billed Wyoming Medicaid for some mental health services provided by each defendant outside of NWTC. These bills were submitted through Big Horn Basin Mental Health Group.

As a result of the administrative audits, Wyoming Medicaid referred Condie and NWTC to federal law enforcement to investigate suspected fraud. Investigators focused first on Condie, who was indicted in May 2017. *United States v. Condie*, No. 17-CR-00124-J (D.Wyo.), Doc. 1 (indictment). The charged fraud was based on several fraudulent billing practices Condie executed through Big Horn Basin Mental Health Group for alleged mental health treatment. Condie

eventually pled guilty to healthcare fraud and was sentenced to serve 36 months in prison. *Id.* at Doc. 57 (judgment).

Investigators then turned their attention to NWTC. As a result of this investigation, in September 2019, the grand jury returned an indictment charging defendants Bennett, Barrus, and Dutson with healthcare fraud conspiracy in violation of §§ 1349 and 1347, healthcare fraud in violation of 18 U.S.C. § 1347, and spending fraud proceeds in violation of 18 U.S.C. § 1957. (Doc. 1.) As alleged in the indictment, the defendants submitted approximately $8.5 million in claims for alleged substance abuse and mental health treatment provided through NWTC's residential substance abuse treatment program. The claims were fraudulent for a number of reasons, including that almost all of the billed-for activities were not covered by Medicaid and most were not provided by licensed treatment providers.

After a number of continuances caused by the complexity of the case, the volume of evidence, and the covid-19 pandemic, trial is scheduled to begin on February 22, 2022. Defendant Barrus is represented by Mr. Terry Harris; defendant Bennett is represented by Ms. Jamie Woolsey and Mr. Ian Sandefer; defendant Dutson is represented by Mr. Ed Wall. All defense counsel are retained.

The government provided defendants the bulk of discovery in October 2019, including thousands of pages of progress notes and supervision sheets documenting the billed-for activities. This discovery included some records and materials gathered by Wyoming Medicaid during its administrative audits; discovery also included evidence gathered during the Condie investigation that related to the defendants or NWTC. The majority of potential witness statements, including interviews and grand jury transcripts, were turned over in March 2020 with additional interviews

and transcripts turned over in September 2020 and November 2021. The government also arranged for defense teams to gather evidence from NWTC's facility in Powell after the government took control of the building as the result of a civil forfeiture. This allowed the defendants to gather additional NWTC records and a number of computers and hard-drives that were not seized by the government during its investigation. The defendants have provided the government thousands of pages of reciprocal discovery.

On August 13, 2021, defendants sent a letter to the government's attorneys requesting additional discovery, some of which related to the investigation and prosecution of Gibson Condie. The government provided some of the requested materials to the defendants in October and November 2021.

On October 18, 2021, Mr. Harris filed on behalf of defendant Barrus an ex parte motion for issuance of subpoenas duces tecum. (Doc. 126.) Such subpoenas are authorized and governed by Rule 17(c) of the Federal Rules of Criminal Procedure. This court held a hearing outside the presence of the government and granted the motion. (Docs. 128 and 129.) Since then, the defendants have twice asked for additional subpoenas and this court has granted each request— again, these requests were filed ex parte so the government did not have an opportunity to see the defendants' motions or proposed subpoenas. (Docs. 131-133.)

One of the orders granting a request for subpoenas was issued on November 10. (Doc. 131.) The Wyoming Medicaid Fraud Control Unit (MFCU) was then served a subpoena with the same date. *See* Attachment 1. MFCU is an agency of the Wyoming Attorney General's Office that is funded in part by the federal government and required to be separate and distinct from the state Medicaid program. 42 C.F.R. 1007.9. MFCU is tasked with investigating and prosecuting fraud

and other unlawful conduct related to the Wyoming Medicaid program, including "fraud in the administration of the Medicaid program." Wyo. Stat. Ann. 42-4-403(a). Here, MFCU participated in the criminal investigation and prosecution of Gibson Condie, participated in the criminal investigation of NWTC, and is currently working with the United States Attorney's Office to prosecute the NWTC defendants.

The subpoena served on MFCU demands that the following documents be delivered to attorney Ian Sandefer's office on or before December 8, 2021:

> A true and correct copy of all audit materials and patient record requests relating to Wyoming Medicaid program audits and record reviews conducted of the Northwest Wyoming Treatment Center ("NWTC") and its billing between 2009 and 2016, and any and all corresponding reports related thereto or generated as part of said audits. This includes any records produced by third-party billers, including but not limited to Big Horn Basin Mental Health Group ("BHBMHG"), in response to audit materials or patient record requests related to NWTC, and any and all corresponding reports related thereto or generated as part of said audits.

Attachment 1 at 1. The defendants made a similar request in their August 13, 2021, discovery letter to the government, including a statement that they knew a number of audit requests had been made of NWTC by Medicaid and its authorized agents during the charged fraud. The government asked the defendants to identify known audits but received no additional information.

The government's attorneys believe similar subpoenas have been served on Wyoming Medicaid, although we do not know the specifics of those subpoenas because we do not represent the Medicaid program.

### ARGUMENT

Rule 17(c) of the Federal Rules of Criminal Procedure authorizes the issuance of subpoenas in criminal cases that require a witness to produce any books, papers, documents, data, or other objects the subpoena designates. But there are limits. Based on the subpoena served on MFCU,

the defendants' Rule 17(c) subpoenas are not being used to obtain admissible evidence for trial but rather to improperly obtain discovery. The subpoenas also violate Rule 17(c) by demanding production of records directly to defense counsel rather than the court. Therefore, subpoenas should be quashed, and the defendants should be required to file future Rule 17(c) subpoena requests in a way that allows the government to object prior to issuance.

1. **The government may challenge Rule 17(c) subpoenas, including subpoenas issued to third parties.**

The government has standing to object to the subpoena issued to MFCU because MFCU is a part of the prosecution team, so the records MFCU has were received or created as part of the criminal investigation. MFCU's director Mr. Kirchhefer has been designated as a special assistant United States attorney and he is an attorney for the government. Therefore, the MFCU subpoena is effectively demanding records from the prosecution team, to which the government certainly has standing to object.

As to subpoenas issued to third parties like Wyoming Medicaid, the government has standing to move to quash a subpoena addressed to a third party if the subpoena infringes on the movant's legitimate interests. *United States v. Raineri*, 670 F.2d 702, 712 (7th Cir.1982) (citing *In re Grand Jury*, 619 F.2d 1022, 1027 (3d Cir.1980)). The government's legitimate interests include but are not limited to "preventing undue lengthening of the trial, undue harassment of witnesses, and prejudicial over-emphasis on [a witness's] credibility." *Raineri*, 670 F.2d at 712.

Here, the government doesn't know the details of subpoenas other than the one issued to MFCU because the defendants filed ex parte. However, the defendants' discovery-demand letter to the government included records related to the Condie investigation, and the subpoena to MFCU refers to records provided by Big Horn Basin Mental Health Group as part of NWTC audits. The

government is concerned that the defendants intend to present evidence related to Condie that is unrelated to the charges against the defendants, which would needlessly lengthen the trial.

Also, the defendants' demand includes patient records involved in an NWTC. The MFCU has an affirmative responsibility to safeguard and avoid improper disclosure of personally identifiable information. 42 C.F.R. §1007.11(f); Wyo. Stat. Ann 42-4-404(b). Thus, the government has a legitimate interest in the release of patient records by MFCU in response to a subpoena. The government is also concerned that the defendants may be demanding patient records from Wyoming Medicaid and other third parties, which records could be outside any protective order in this case and provided directly to defense counsel without court supervision. The Condie investigation involved mental health treatment records; the NWTC investigation involved substance abuse and mental health treatment records. These patient records are sensitive. Every disclosure (even those authorized or required by law) risks dissemination of confidential records beyond the parties to this criminal prosecution, which would be detrimental to the patients and to the subpoenaed party in that they could be blamed for the dissemination. The government has a legitimate interest in protecting these patient records from unnecessary disclosure in response to a Rule 17(c) subpoena.

The government also has a legitimate interest in maintaining its relationship with Wyoming Medicaid and the state of Wyoming. The defendants are demanding records and reports from MFCU that would have been gathered and created by Wyoming Medicaid and/or its agents during administrative audits. The government is concerned that the burden and expense of gathering records in response to a subpoena, combined with the subsequent risk of dissemination and potential disclosure of internal reports, may harm the cooperative relationship between the state of

Wyoming and the federal government in this area. Such harm would make it more difficult for the government to investigate and prosecute fraud on a federally funded healthcare benefit program like Medicaid, so the government has a legitimate interest in opposing the defendants' improper subpoena requests directed to the state of Wyoming.

**2.  The MFCU subpoena should be quashed because it improperly seeks to obtain criminal discovery.**

The MFCU subpoena is an improper attempt to obtain criminal discovery through Rule 17(c). As explained below, criminal discovery is limited and governed by Rule 16, the Jencks Act, and cases interpreting the government's discovery obligations. Rule 17(c) is not a self-help remedy for a defendant who is dissatisfied with the substance or pace of discovery provided by the government.

There is no general constitutional right to discovery in a criminal case. *See Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). However, it is a violation of the constitutionally protected right to due process for the prosecution to suppress material evidence favorable to the accused, *Brady v. Maryland*, 373 U.S. 83, 87 (1963), including evidence relevant to the credibility of government witnesses, *Giglio v. United States*, 405 U.S. 150 (1972).

Evidence is suppressed by the government in violation of the Constitution only if the government has a duty to disclose it. *See Strickler v. Greene*, 527 U.S. 263, 282 (1999). The scope of this duty requires a prosecutor to learn of "favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitely*, 514 U.S. 419, 437 (1995). For disclosure purposes*,* the prosecution team includes "not only the individual prosecutor handling the case, but also extends to the prosecutor's entire office, as well as the law enforcement personnel and other arms of the state involved in investigative aspects of a particular criminal

venture." *Smith v. Secretary of N.M. Dept. of Corr.*, 50 F.3d 801, 824 (10th Cir. 1995). While "a prosecutor may be required to search files maintained by governmental agencies that are part of the prosecution team, a prosecutor does not have a duty to obtain evidence from agencies that are not part of the prosecution team." *United States v. Rosenchien*, 2019 WL 229810, *3 (D.N.M. 2019) (not reported) (citing *Smith v. Secretary of N.M. Dept. of Corr.*, 50 F.3d 801, 824 (10th Cir. 1995)); *Tiscerano v. Anderson*, 639 F.3d 1016, 1021 (10th Cir. 2011) (vacated in part on other grounds by *Tiscerano v. Anderson*, 421 Fed. Appx. 842 (10th Cir. 2001)).

Despite the government's broad discovery obligations, criminal discovery remains limited. For example, prosecutors do not have a duty to give over their entire file to the defense. *United States v. Agurs*, 427 U.S. 97, 111 (1976). Nor are prosecutors required to provide the defense with an accounting of all police investigatory work on a case. *Moore v. Illinois*, 408 U.S. 786, 795 (1972). And *Brady* does not require the prosecution to divulge every shred of evidence that could possibly benefit the accused. *Hooks v. Workman*, 689 F.3d 1148, 1180 (10th Cir. 2012); *United States v. Beers*, 189 F.3d 1297, 1304 (10th Cir. 1999).

Within the framework described above, Rule 16 of the Federal Rules of Criminal Procedure requires the government to produce specific information. But again, the scope of the rule is limited. Rule 16 does not authorize "a blanket request to see the prosecution's file," and a defendant may not use the rule to engage in a "fishing expedition." *United States v. Grarcia*, 2021 WL 53198, *1 (D.N.M 2021) (quoting *United States v. Maranzino*, 860 F.2d 981, 985-86 (10th Cir. 1988)). As relevant here, Rule 16 commands the government to

> permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:

10

(i) the item is material to preparing the defense;

(ii) the government intends to use the item in its case-in-chief at trial; or

(iii) the item was obtained from or belongs to the defendant.

FED. R. CRIM. P. 16(a)(1)(E). However, this rule "does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case. Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500." *Id.* at 16(a)(2).

Section 3500(a), which is commonly referred to as the Jencks Act, provides that "no statement or report in the possession of the United States which was made by a Government witness or a prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a). The Jencks Act limits statements to written statements adopted by a witness and recordings of a witness's statement. 18 U.S.C. § 3500(e). In turn, Rule 26.2 of the Federal Rules of Criminal Procedure, "with minor exceptions, makes the procedure identical for both prosecution and defense witnesses." FED. R. CRIM. P. 26.2, advisory committee notes (1979 Addition).

Rule 17(c) subpoenas do not add to criminal discovery or provide an alternative means of gathering discovery. *United States v. Abdush-Shakur*, 465 F.3d 458, 467 (10th Cir. 2006) (citing *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951)). As explained by the Supreme Court, "[i]t was not intended by Rule 16 to give a limited right of discovery, and then by Rule 17 to give a right of discovery in the broadest terms." *Bowman Dairy Co.*, 341 U.S. at 220. Therefore,

the MFCU subpoena, should be quashed in the first instance because it improperly seeks criminal discovery from the prosecution team through Rule 17(c). If the defendants are dissatisfied with the discovery they have received thus far, the proper course is to ask the prosecution team and, if unsatisfied with the government's response, file a motion to compel discovery based on Rule 16, the Jencks Act, *Brady*, *Giglio*, and other law governing criminal discovery. The government may then respond to the defendants' requests and arguments, and the court can make a decision based on the competing arguments. Failing to quash the MFCU subpoena would allow the defendants to wrongly bypass the limits on criminal discovery through Rule 17(c).

Thus, properly understood, Rule 17(c) gives defendants the ability to use the court's power to bring witnesses to testify, FED. R. CR. P. 17(a) and (b), and require production of books, papers, documents, data, and other objects to the court for use as evidence at trial, *id.* 17(c)(1).  But the purpose of the rule is to expedite trial, not expand a defendant's investigatory powers or access to discovery:

> Rule 17 provided for the usual subpoena ad testificandum and duces tecum, which may be issued by the clerk, with the provision that the court may direct the materials designated in the subpoena duces tecum to be produced at a specified time and place for inspection by the defendant. Rule 17(c) was not intended to provide an additional means of discovery. Its chief innovation was to expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials.

*Bowman Dairy Co.*, 341 U.S. at 220.

The court may order pretrial production and inspection of evidence by the parties. FED. R. CR. P. 17(c)(1). But there is no automatic right to pretrial production: "in order to require production prior to trial, the moving party must show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of

due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'" *United States v. Nixon*, 418 U.S. 683, 699-700 (1974) (footnote omitted); *see also Abdush-Shakur*, 465 F.3d at 467; *United States v. Morris*, 287 F.3d 985, 991 (10th Cir. 2002). To carry this burden, the requesting party must "clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." *Nixon*, 418 U.S. at 700. The MFCU subpoena trips over each one.

Working backwards through the hurdles, the MFCU subpoena is so broadly worded as to demand entire audit files without identifying any specific audits or record reviews. This lack of specificity shows the request is an improper fishing expedition. *Cf. Morris*, 287 F.3d at 991 ("requests for an entire file are evidence of an impermissible fishing expedition"). The subpoena also demands inadmissible evidence, specifically all reports generated as a result of any NWTC audit. Such reports are almost certainly hearsay and therefore inadmissible at trial, except perhaps for impeachment. Rule 17(c) cannot be used to require pretrial production of impeachment materials because these materials do not become evidence unless and until a witness testifies. *See United States v. Cuthbertson*, 630 F.2d 139, 144-145 (3rd Cir. 1980). Therefore, the defendants fail to show that the MFCU subpoena demands only admissible evidence. Finally, as to relevance, records in the possession of MFCU must be obtained through criminal discovery because MFCU is a part of the prosecution team. The government has provided the defendants thousands of pages of discovery, including patient records documenting the billed-for activities that were fraudulently billed to Wyoming Medicaid and records related to Medicaid audits. Given the voluminous discovery already provided to them by the government, the defendants should be required to

explain why the subpoenaed audit materials would be relevant evidence at trial. And if they have done so ex parte, the government deserves an opportunity to respond to those arguments.

Therefore, in addition to improperly demanding production of records from the prosecution team, the MFCU subpoena should be quashed because it fails to meet the *Nixon* requirements for using a Rule 17(c) subpoena to demand pretrial production of evidence.

### 3. The MFCU subpoena should be quashed because it improperly orders production to defense counsel, not the court.

Even if the MFCU subpoena were not an improper attempt to get criminal discovery and inadmissible evidence, it should be quashed because it attempts to order production to defense counsel rather than the court. Under Rule 17, "[t]he court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them." FED. R. CR. P. 17(c)(1). The language of the rule requires production to the court for a hearing or trial, not unsupervised production to a party. *Cf. United States v. Villa-Chaparro*, 115 F.3d 797, 804 (10th Cir. 1997) ("Courts have consistently interpreted Fed. R. Crim. P. 17(a) to permit the issuance of subpoenas only to compel attendance at formal proceedings such as hearings and trials."); *see e.g. United States v. Boutte*, No. 1:17-CR-3338-JMC, 2019 WL 2929049, at *4 (D.N.M. July 8, 2019) (holding that defendant "also violated Rule 17(c) by demanding that the agencies produce these documents at his attorney's office.").

Here, the MFCU subpoena requires production to attorney Sandefer's office. This violates Rule 17(c)'s requirement that subpoenaed items be produced to court for supervised inspection by the parties. Therefore, the MFCU subpoena should be quashed on this basis as well.

**4. The defendants' other Rule 17 subpoenas should be quashed for the same reasons— and because the motions requesting these subpoenas were filed ex parte.**

Given the defects in the MFCU subpoena, it is reasonable to believe that the other Rule 17 subpoenas requested ex parte by the defendants fail to meet the *Nixon* requirements for pretrial production of trial evidence and improperly order production to defense counsel rather than the court. The government is handicapped in this argument because we cannot review the defendants' ex parte motions. However, we understand Wyoming Medicaid has received subpoenas that, like the MFCU subpoena, order production to a defense attorney's office on a date prior to the scheduled trial or any scheduled hearing. If so, these subpoenas violate Rule 17(c) and should be quashed.

All of the defendants' Rule 17(c) subpoenas also should be quashed because they were requested ex parte. Rule 17(b) expressly provides for ex parte witness subpoenas for testimony when requested by an indigent defendant, but there is no such authorization for ex parte subpoenas duces tecum under Rule 17(c). *See United States v. Hart*, 826 F.Supp. 380, 381-82 (D.Colo. 1993). There appears to be no consensus on the issue, *see United States v. Fox*, 275 F.Supp.2d 1006, 1010-1012 (D.Neb. 2003) (collecting cases), but the majority (and better) rule is to allow all parties to review motions for Rule 17(c) subpoenas because there is not clear authorization for ex parte applications as there is in Rule 17(b) and because Rule 17(c) subpoenas are subject to misunderstanding and abuse. For the same reasons, the government requests that the defendants be required to file subsequent motions for Rule 17(c) subpoenas in a manner that allows the government to review the request and object prior to issuance.

**5. Records already produced to the defendants should be provided to the court, and the government should be allowed to inspect those records.**

The government believes records have already been provided directly and exclusively to defense counsel in response to defective Rule 17(c) subpoenas. The defense counsel should be ordered to place those records in the custody of the court such that the court may permit the parties (including the government) to inspect them.

WHEREFORE, for the reasons stated above, the government respectfully requests that all Rule 17(c) subpoenas issued by this court in response to ex parte motions by the defendants be quashed. These subpoenas were authorized by this court's orders bearing docket numbers 129, 131, and 133. If granted, the government requests that the defendants be ordered to provided notice and a copy of the order to all subpoenaed individuals and entities, including those that have already responded.

The government further requests that the defendants be ordered to file subsequent motions for subpoenas in a manner that allows the government to review the request and object prior to issuance.

Finally, the government requests that any evidence already provided to the defendants in response to a subpoena be given to the court as required by Rule 17(c) and that the government be granted an opportunity to inspect the evidence. The government further requests that the defendants be prohibited from keeping a copy of such evidence unless specifically provided a copy by this court.

Respectfully submitted this 7th day of December, 2021.

L. ROBERT MURRAY
United States Attorney


By:      */s/ Eric Heimann*_____
ERIC J. HEIMANN
Assistant United States Attorney


By:      */s/ Travis Kirchhefer*_____
TRAVIS J. KIRCHHEFER
Special Assistant United States Attorney




## CERTIFICATE OF SERVICE

This is to certify that on this 7th day of December, 2021, I served true and correct copies

of the foregoing response upon all counsel via CM/ECF.

      */s/  Corine M. Aranda*_____
UNITED STATES ATTORNEY'S OFFICE