IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2021 DEC 27 AM 9:27

MARGARET BOTKINS, CLERK
CHEYENNE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>VS.<br><br>MATTHEW TY BARRUS,<br>GREGORY J. BENNETT, and<br>DEVIN E. DUTSON,<br><br>Defendants, | Case No. 19-CR-171-J |

### ORDER DENYING GOVERNMENT'S MOTION TO QUASH—ECF NO. 135

THIS MATTER comes before the court on the Government's *Motion to Quash*, ECF No. 135. The court held a hearing on this matter in December 2021 ("December hearing"). Having considered the filings, applicable law, and being otherwise advised, the court finds the Government's Motion to Quash—ECF No. 135—should be **DENIED**.

### BACKGROUND

Defendants operated a substance abuse treatment program—Northwest Wyoming Treatment Center, Inc. ("NWTC"). Defendant Barrus served as NWTC's executive director, Defendant Bennett served as the clinical director, and Defendant Dutson served as a therapist (collectively "Defendants"). In 2015, Wyoming Medicaid audited NWTC. As a result of the audits, Wyoming Medicaid suspected fraud and referred NWTC to federal law enforcement.

Around this time, Wyoming Medicaid also audited a mental health provider—Big Horn Basin Mental Health Group—which was owned by psychologist—Gibson Condie ("Condie"). Condie had a history with NWTC. He created NWTC as a nonprofit, served as its corporate director, and was its registered agent with the Wyoming Secretary of State. He also enrolled NWTC as a Medicaid provider in 2008, and allegedly mentored Defendants and trained them on Medicaid billing procedures. As a result of this audit, Wyoming Medicaid also referred Condie to federal law enforcement. Condie later pleaded guilty to healthcare fraud.

In 2019, a grand jury indicted Defendants on charges for healthcare fraud conspiracy, healthcare fraud, and spending fraud. The Government provided Defendants with discovery in October 2019. Still, Defendants sought additional documents including some related to the investigation and prosecution of Condie. So Defendants ex parte moved for the issuance of five subpoenas. The subpoenas were directed to (1) Wyoming Medicaid; (2) ACS—a Xerox Company; (3) the Wyoming Department of Health Program Integrity Unity; (4) the Wyoming Department of Health Healthcare Financing Division; and (5) the Wyoming Medicaid Fraud Control Unit ("MFCU")—an agency of the Wyoming Attorney General's Office. The subpoenas requested:

> A true and correct copy of all audit materials and patient record requests relating to Wyoming Medicaid program audits and record reviews conducted of the Northwest Wyoming Treatment Center ("NWTC") and its billing between 2009 and 2016, and any and all corresponding reports related thereto or generated as part of said audits. This includes any records produced by third party billers, including but not limited to Big Horn Basin Mental Health Group ("BHBMHG"), in response to audit materials or patient record requests related to NWTC, and any and all corresponding reports related thereto or generated as part of said audits.

ECF No. 130. This court held hearings without the Government present and granted issuance of all five subpoenas. ECF No. 131. The Government later moved to have the summons quashed. ECF No. 135.

In its motion to quash, the Government argued that (1) the subpoenas were being used to obtain criminal discovery; and (2) the subpoenas violated Federal Rule of Criminal Procedure 17(c) requirements. ECF No. 135. Defendants responded to the Government's arguments and also argued that the Government lacked standing to challenge the subpoenas issued to anyone other than MFCU—an admitted member of the Government's prosecution team. This court first addresses whether the Government has standing to move to quash the subpoenas directed to (1) Wyoming Medicaid; (2) a Xerox Company; (3) the Wyoming Department of Health Program Integrity Unity; and (4) the Wyoming Department of Health Healthcare Financing Division. Concluding it does not, this court next addresses the Government's merits arguments on MFCU only.

## ANALYSIS

### I. Standing

Before the court analyzes the merits of the Government's motion to quash, the court must first assess whether the Government has standing to move to quash the subpoenas issued to various third parties. The Government, as the party trying to invoke the court's jurisdiction, has the burden of proving standing. *KVOS, Inc. v. Ass. Press*, 299 U.S. 268, 278 (1936). To try to meet its burden, the Government directs this court to one case—*United States v. Raineri*, 670 F.2d 702, 712 (7th Cir. 1982). In *Raineri*, the Seventh Circuit held that "[a] party has standing to move to quash a subpoena addressed to another if the subpoena infringes upon the movant's legitimate interests." *Id.* The Seventh Circuit noted that these legitimate interests may include "undue lengthening of the trial, undue harassment of its witnesses, and prejudicial over-emphasis on . . . credibility." *Id.*

*Raineri* does not help the Government meet its burden here. First, this case is distinct from *Raineri*. In *Raineri*, the defense counsel subpoenaed a prosecution witness to reappear as a defense witness after she had been already called and cross examined at trial. *Id.* So although undue harassment and prejudicial over-emphasis of creditability may have been legitimate interests in *Raineri*, they aren't here where Defendants requested copies of records, audits, and reviews. Still, the Government gloms onto the idea that the disclosure of the extra information will result in an undue lengthening of trial. But a conclusory statement that the Government is "concerned that the Defendants intend to present evidence . . . which would needlessly lengthen trial," does not make it so. ECF No. 135 at 7–8. For that reason, this one sentence of argument does not convince this court that a legitimate interest in the timeliness of trial confers standing.

Second, beyond the legitimate interests listed in *Raineri*, the Government also argues it has interests in—(1) the protection of private information; and (2) the maintenance of a good relationship with the state of Wyoming. Again, the court does not find either of these interests confers standing here.

On the protection of private information, the Government argues it has a legitimate interest in protecting "patient records from unnecessary disclosures in response" to the subpoenas. ECF No. 135 at 8. In explaining this interest, the Government expresses concern that the disclosed records would be outside any protective order in this case. ECF No. 135 at 8. Although this court values interests in privacy, this interest can be easily remedied by entry of another protective order. And as this court explained at the December hearing, the Government is welcome to request another protective order. For that reason, this interest does not confer the Government with standing.

Finally, on the maintenance of a good relationship with the state of Wyoming, the Government expresses concern that "the burden and expense of gathering records in response to a subpoena, combined with the subsequent risk of dissemination and potential disclosure of internal reports, may harm the cooperative relationship between the state of Wyoming and the federal government." ECF No. 135 at 9. Again, the Government provides no factual support for this argument and instead offers this one conclusory statement on a generalized concern it has. And what's more, the Government has offered no legal support that concern over cooperative relationships is legitimate and sufficient enough to confer standing.

For these reasons, the Government has not met its burden. So it has standing to challenge the MFCU subpoena.

II.  Merits

The Government argues the MFCU subpoena should be quashed for three reasons: (1) Defendants are improperly seeking to obtain criminal discovery; (2) the subpoena orders production to defense counsel, not the court; and (3) the subpoena was filed ex parte. This court addresses each merits argument in turn.

A.  Seeking Criminal Discovery

The Government argues that criminal discovery is limited and Defendants cannot circumvent those limitations by requesting the Government's file under Rule 17. And, the Government contends, that if Defendants "are dissatisfied with the discovery they have received thus far, the proper course is to ask the prosecution team and, if unsatisfied with the Government's response, file a motion to compel discovery based on Rule 16 . . . and other law governing criminal discovery." ECF No. 135 at 12. Said another way, the Government believes

that Defendants are impermissibly using the MFCU subpoena to go on a "fishing expedition" and if they want more discovery, they need to operate under Rule 16 *not* Rule 17.

The court may order the pretrial production and inspection of designated items. FED. R. CR. P. 17(c)(1). "[I]n order to require production prior to trial, the moving party must show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonable in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'" *United States v. Nixon*, 418 U.S. 683, 699–700 (1974). So Defendants here had to "clear three hurdles: (1) relevancy; (2) admissibility; [and] (3) specificity." *Id.* at 700. The Government argues Defendants did not clear a single one. This court disagrees.

First, the Government argues Defendants have not explained why audit materials would be relevant at trial. But these audits and reviews go directly to the crimes charged and their investigation. And so this court believes that these audits will be relevant to the overall defense strategy.

Second, the Government argues the audit reports would be "almost certainly hearsay and therefore inadmissible." ECF No. 135 at 13. Although "[g]enerally the need for evidence to impeach witnesses is insufficient to require [] production in advance of trail," if other valid evidentiary uses for the same material exist, the admissibility hurdle is cleared. *Nixon*, 418 at 700–01. This court finds that Defendants have made an adequate preliminary showing that evidentiary uses for these audits and reports exist. Plus, as much as these materials contain hearsay, the hearsay rule does not automatically bar all out-of-court statements contained within

business reports and audits. So this court believes Defendants may be able to show that exceptions to the hearsay rule exist.

Third, the Government argues the MFCU subpoena is too broadly worded to identify specific audit files or record reviews. ECF No. 135 at 13. Although multiple documents may be the subject of the MFCU subpoena, a bulk of material does not inherently suggest a lack of specificity. Defendants have specified the audits of interest and the period within which they fall. Despite Government's contentions otherwise Defendants are not asking for the prosecution's entire file. Instead, the MFCU subpoena requests,

> A true and correct copy of all audit materials and patient record requests relating to Wyoming Medicaid program audits and record reviews conducted of the Northwest Wyoming Treatment Center ("NWTC") and its billing between 2009 and 2016, and any and all corresponding reports related thereto or generated as part of said audits. This includes any records produced by third party billers, including but not limited to Big Horn Basin Mental Health Group ("BHBMHG"), in response to audit materials or patient record requests related to NWTC, and any and all corresponding reports related thereto or generated as part of said audits.

The court finds this request sufficiently specific. For these reasons, Defendants have cleared all three *Nixon* hurdles and may operate under Rule 17.

### B.   Production to Defense Counsel

The Government argues that independent of the discovery arguments, this court should quash the subpoenas because they order production to defense counsel rather than the court. ECF No. 135 at 14. The Government cites two cases in support of its argument. First, it cites *United States v. Villa-Chaparro*, 115 F.3d 797 (10th Cir. 1997). But *Villa-Chaparro* differs from this case because it addresses subpoena power under Federal Rule of Criminal Procedure 17(a). True, "[c]ourts have consistently interpreted Fed. R. Crim. P. 17(a) to permit the issuance of subpoenas only to compel attendance at formal proceedings such as hearings and trials." *Id.* at 804. But Defendants requested subpoenas under Rule 17(c), which governs the production of documents

and objects. FED. R. CR. P. 17(c)(1). And that differs from Rule 17(a) which governs subpoenas commanding witness attendance and testimony. FED. R. CR. P. 17(a). Second, the Government cites *United States v. Boutte*, No. 1:17-CR-JMC, 2019 WL 2929049, at *4 (D.N.M. July 8, 2019). But in *Bouttee* the New Mexico district court granted the government's motion to quash for failure to seek the court's leave before issuing a Rule 17(c) subpoena. And although the *Boutte* court provides one sentence saying that the defendant "also violated Rule 17(c) by demanding that the agencies produce these documents at his attorney's office," that one sentence of dicta does not convince this court that Rule 17(c) mandates disclosure to the court.

Rule 17(c) says that the court "*may* direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court *may* permit the parties and their attorneys to inspect all or part of them." FED. R. CR. P. 17(c)(1) (emphasis added). And that differs from Rule 17(a)'s language which says *must* not *may*. FED. R. CR. P. 17(a) ("A subpoena *must* . . . command the witness to attend and testify at the time and place the subpoena specifies. The clerk *must* issue a blank subpoena . . . ." (emphasis added)). The difference in language within the same rule suggests intentionality. So because the drafters used "must" in some Rule 17 provisions and "may" in others, this court reads Rule 17(c) as permissive. This reading is reaffirmed by other jurisdictions' caselaw. *See United States v. Fritzel*, No. 18-40059-DDC, 2019 WL 2268964, at *3–4 (D. Kan. May 28, 2019). For that reason, this court will not quash the MFCU subpoena because it orders production to defense counsel, not the court.

C.     Ex Parte Filing

Finally, the Government argues that Defendants' Rule 17(c) subpoenas should be quashed because Defendants requested them ex parte. ECF No. 135 at 15. As the Government

acknowledges in its briefing, there is no consensus on whether a party can apply for a Rule 17(c) subpoena ex parte. *See United States v. Fox*, 275 F. Supp. 2d 1006, 1010–12 (D. Neb. 2003) (collecting cases). And as far as this court is aware, the Tenth Circuit has not spoken on this issue in a way that applies here. So this court turns to other jurisdictions. In these other jurisdictions, some "courts have held that ex parte applications under Rule 17(c) may be appropriate in limited circumstances." *Id.* at 1011 (collecting cases). One of these limited circumstances is where disclosure would reveal trial strategy. *Id.* (collecting cases). And, as explained above, this court finds that circumstance applies here.

Plus, even if that circumstance did not apply here, courts in other jurisdictions "have held that ex parte applications under Rule 17(c) may be granted routinely, provided that the relevancy, admissibility, and specificity standards of *United States v. Nixon* . . . are satisfied." *Id.* at 1012. Again, as explained above, Defendants have cleared all three *Nixon* hurdles.

For these reasons, this court concludes that the subpoenas should not be quashed just because Defendants requested them ex parte.

## CONCLUSION

For these reasons, it is **ORDERED** the Government's Motion to Quash—ECF No. 135—is **DENIED**.

Dated this 23rd day of December, 2021.

Alan B. Johnson
United States District Judge