# *Attachment 13*

# Provider Subsystem - Provider: ▮▮▮▮4100  NPI: ▮▮▮▮0351

Last Transaction 062711   User 131   INQUIRY

**Tabs:** Display 1 | Display 2 | Display 3 | Display 4 | Display 5 | Display 6 | Display 7 | Display 8

## Practice Name and Address

NORTHWEST WYOMING TREATMENT CENTER

1106 JULIE LANE
POWELL   WY   824351632

Telephone: 307 254 0000 , 307 254 0575
Fax: [ ] [ ] [ ]
PO Box: N

- Taxonomy: 261QR0405X   ABUSE REHB  +
- Type Practice: 01   IND PRAC
- County: 11   PARK
- District: 01
- Old Provider: [ ]
- Out of State: N
- New Provider: 1267141   01
- Atypical: N
- LT101 Inquiry: N

## Enrollment Status

| | | Begin | End |
|---|---|---|---|
| E | TERM VOL | 070111 | 999999 |
| 1 | ACTIVE | 080108 | 063011 |

## Alternate Keys

- Tax Type/ID: E  ▮▮▮▮0754  +
- DEA: [ ]
- UPIN: [ ]
- NPI: ▮▮▮▮0351
- Sort Name: NORTHWEST WYOMING TREATMENT CENTER

## Occurrences

| Claim Types | 1 | Hold Review | 0 |
| Addresses | 1 | Charge Rates | 0 |
| Bed Data | 0 | Groups | 0 |
| Emails | 1 | Group Mbr | 0 |
| CLIA | 0 | Billing Agent Mbr | 0 |
| Lab Classes | 0 | | |

## Certification

- Effective Date: [ ]
- Cert Number: [ ]

## Web Enrollment

- Type: W
- Reference #: 1C29C1F6792

Enter | More Info | Summary

## Wyoming Department of Health – Office of Healthcare Financing
## CURT Referral Form

Wyoming EqualityCare/Medicaid shall be responsible for the detection of suspected fraud, theft, abuse, presentment of false or duplicate claims or presentment of claims for services not medically necessary or false statement or representation of material facts by providers. *Your responsibility* is to maintain an awareness of provider practice patterns and to refer any suspected fraud, theft or abuse for further investigation.

| | |
|---|---|
| Name of Submitter: Susan Malm | Address: Qwest, Ste 210 |
| Office/Division: DHCF | Phone number: 777-8985 <br> Email: susan.malm@wyo.gov |

Source of information:  ☐ Recipient Complaint   X Provider Complaint   X HealthSpotlight   Other
☐ Claims Review/Research   ☐ System Problem   ☐ Cognos Query

Additional information: __See Attached__
Caller's Name        Phone Number        Email        Mailing Address

Date information received: 2010                    By Whom: Christine

Please give a detailed explanation of referral including nature of complaint, all parties involved (pay to provider(s), treating provider(s) and recipient(s) and identification numbers if available), dates of activity, possible contacts for more information, etc.

| | |
|---|---|
| **Pay to Provider ID(s):** | ▇▇41 00 |
| **Pay to Provider Name(s):** | Northwest Wyoming Treatment Center |
| **Recipient ID(s):** | |
| **Recipient Name(s):** | |
| **Period of Time reviewing:** (i.e. Dates of Service) | Calendar Year 2011 |
| **Purpose for Review:** (list a specific service/procedure, quality of care issue, billing, treating provider, etc.) Attach any additional information that will be helpful. | See attached complaints/reports. Please do appropriate random sample to review information attached. |

Please return this form to:    ACS, Inc.
Attention: Medical Policy Unit
PO Box 667
Cheyenne, WY 82001

Date Sent to ACS: _____        Date Received by ACS: _____

### Definitions.

"Abuse." A pattern of practice by a provider or a recipient that results in health care utilization which is inconsistent with sound fiscal, business, or medical practices, and results in unnecessary costs to Medicaid, or in payment for services that are not medically necessary or that fail to meet professionally recognized standards for health care. Abuse is characterized by, but not limited to, any one of the following:

(i) The repeated submission of claims by a provider from which required material information is missing or incorrect. Examples include, but are not limited to: incorrect or missing procedure or diagnosis codes, missing signatures, incorrect mathematical entries, incorrect third party liability information, or the incorrect use of procedure code modifiers;

(ii) The repeated submission of claims by a provider presenting procedure codes which overstate the level or amount of services provided;

(iii) The repeated submission of claims by a provider for services which are not reimbursable under Medicaid, or the repeated submission of duplicate Claims;

(iv) Failure by a provider to develop and maintain legible medical records which document the nature, extent and evidence of the medical necessity of services provided;

(v) Failure of a provider to use generally accepted accounting principles, or other accounting methods, which relate entries on the medical record to entries on the claim;

(vi) Excessive or inappropriate patterns of referral;

(vii) The repeated submission of claims by a provider for services, which were not medically necessary;

(viii) The repeated submission of claims by a provider for services, which exceed that requested or agreed to by the recipient or the recipient's responsible relative or guardian;

(ix) The submission of claims for services not medically necessary under the generally accepted practice of providers of such services;

(x) Over prescribing or misprescribing pharmaceutical products or other services;

(xi) The repeated submission of claims by a provider without complying with the provisions of Chapter 4: (Third Party Liability)

(xii) A recipient permitting the use of the recipient's Medicaid identification coupon by any unauthorized individual for the purpose of obtaining services;

(xiii) A recipient obtaining services which are not medically necessary for the purpose of resale or for the use of a non-recipient;

(xiv) A recipient obtaining duplicate services from more than one provider for the same medical condition, other than confirmation of a diagnosis, evaluation or assessment; or

(xv) Misuse.

"Fraud." An intentional deception or misrepresentation made by an individual with the knowledge that the deception or misrepresentation may result in excess payments. "Fraud" includes any actions or inactions that constitute fraud under federal or state law.

**General Provider Information**                                       **Utilization Review**

### 4.7.1 Report of Suspected Abuse of the EqualityCare Healthcare System

 Wyoming Department of Health | Commit to your health, visit healthywyoming.org



 WYOMING DEPT. OF HEALTH
DEC 14 2010
EQUALITY CARE

Brent D. Sherard, M.D., M.P.H., Director and State Health Officer       Governor Dave Freudenthal

NAME(s) OF EQUALITYCARE CLIENT/ PROVIDER: Northwest Wyoming Treatment Center, Ty Barnus, Greg Bennett, Devin Dutson

ADDRESS OF EQUALITYCARE CLIENT/ PROVIDER: 1106 Julie Lane, Powell, WY 82435

TELEPHONE NUMBER OF EQUALITYCARE CLIENT/ PROVIDER: (307) 271-7460

Please give a brief description of how the EqualityCare client/provider is abusing the EqualityCare healthcare system. (If possible, give dates of occurrence.)

see attached form

PLEASE CHECK ONE:  EMERGENCY CARE ___   NON-EMERGENCY CARE ✓

Signature of Person Reporting Abuse: [signature] CCSW        Date: 12/8/10

ADDRESS: PO Box 847, Powell, WY 82435                Telephone # (307) 254-2721

The above confidential information shall only be used to determine what action is necessary by the Wyoming Department of Health, Office of Healthcare Financing.

**RETURN THIS FORM TO:**
Program Integrity Unit
Office of Healthcare Financing
6101 Yellowstone Rd.
Suite 210
Cheyenne, WY 82002

12-8-10

To Whom It May Concern:

This letter is in regards to, what I believe to be, abuse of the EqualityCare Healthcare System. I will attempt to be brief. I must also mention that these individuals are friends of mine and also my neighbors, so I would ask and appreciate that this information be kept completely confidential. Please avoid using descriptive wording that I have used to keep it confidential.

I have addressed these issues with the therapists and their Medicaid supervisor in the past, per my code of ethics as set forth by NASW. My attempts to address this have gone unheeded.

The therapists and organization mentioned above for the last 2-3 years have run, in my professional opinion, groups that fail to meet professionally recognized standards that are then billed to Medicaid as therapeutic in nature. Other professionals around the area, as well as citizens in the community, have commented on these groups. Examples are: 2-3 hour long football and basketball games with little to no therapeutic intervention being done. Going to the college gym to lift weights where the therapist puts in his headphones to listen to his music and lift weights while the clients lift weights or go into the gym unsupervised. Citizens in the community have complained about the students kissing in the gym unsupervised. All day trips to the zoo. These are just a few of many. There is a laundry list of incidents like these, but I will limit this report to the ones stated above. These types of "groups" happen several times a week. Their website states that each student receives 30 hours of treatment. It appears that it is a mass group for mass billing. Professionals in the area refer to these "groups" as play time, in a mocking sense because they too have witnessed it. I started my career as a frontline staff in a facility such as this in Utah and this is what you pay frontline staff to do with zero therapeutic value.

It is easy to write a note and make it look like therapy was done. I imagine that interviews with staff and clients may need to be done. It is frustrating as a mental health professional to see these types of services devalued due to these practices. I hope that people in our community do not judge the work other professionals do due to these practices. Another frustration is the economic cuts that have occurred and then to see this.

I appreciate the confidentiality.

Sincerely,

Nathan Cook, LCSW

# ANALYST REPORT
## CASE #1349

Columns were added to the results of this query in order to determine the average number of units per day and the averages hours of services provided to the recipients per day. (See attachment D) Analysis was performed in an attempt to determine whether excess services were being billed by NWTC and the secondary provider, Big Horn Basin Mental Health Group (#▮▮▮684 00).  After this query was performed analyst determined the recipients for these providers and additional queries were performed for each provider, utilizing MIDs for these recipients, for all medical claims for the calendar years 2008 and 2009.  His identified other psychological services that were provided for these recipients that may/may not have been provided for the NWTC recipients. These attachments are identified by the respective provider names.  Through review/analysis of other providers within this same taxonomy for similar services it was determined that services exceeding four (4) hours per day should be identified for possible review.   (See methodology listed below)

<u>Methodology used in analysis the data for NWTC recipients</u>:    A COGNOS query was performed for "All Medical" claims for the NWTC recipients for the calendar year 2008 and 2009.  The only limitations regarding this query were that it was filtered to determine "Original" and "Final".  After the query was performed an attempt was made by the analyst to remove all non-psychological services that were performed for items such as physical illness/injury.  Columns were then added in order to provide for analyst to record/identify the amount of time equating to the unit of services that were provided for a given were procedure, where applicable. These columns are identified as "Minutes per Unit".  In the occasion(s) where the unit related to a time span as close to an average or minimum time was listed in this column.

An additional column was added which identified the "Av Units per Day". An Excel formula was constructed identified the number of units provided, during the billed time period, divided by the number of days listed in the time period. Weekends/other days where no services were provided were not taken into consideration but simply the entire number of days. It is believed by the analyst that the final number in this average may be somewhat conservative as it is highly unlikely that these services were provided seven days a week.

Another column was added which identified the "Av Hrs per Day". As with the former, an Excel formula was developed that calculated the number of minutes per unit multiplied by the average units per day and the result was divided by sixty. Spreadsheet was then sorted by recipient original MID, FDOS, TCN and by line number. The individual recipients were then separated by line spacing. Outlier services are identified in red lettering.

In many instances, as mentioned earlier it was difficult with this provider to accurately determine the actual amount of series provided on a given day due to the provider's billing practices. For instance some services were clearly provided for was billed as four hours for a one day period. In another instance several hundred hours of services might be billed for a fifteen (15) to thirty (30) day period. Compounding this is that other services are billed for a day or days that fall within these time periods. A second provider appears regularly within this spreadsheet that also bills for services somewhat similarly. It seemed that services were confined to these two providers. Both amounts often far exceed what

1/2

## ANALYST REPORT
## CASE #1349

analyst was able to determine was usual, which normally totaled less than four (4) hours of services per day per recipient. An attempt was made by analyst to identify these dates within the spreadsheet and where possible show a total.

CONCLUSIONS: As a result of the analysis of the queries it was determined that not only was the provider(s) using the listed procedure codes extensively but were also billing for services for extended daily periods of time, many in excess of eight (8) hours a day and some in excess of fifteen (15) to twenty (20) hours a day. Along the lines of procedure usage at least one claim (TCN 3-09133-00-057-0000-10) procedure codes H0005, H0006, H0047 and H2015 were possibly improperly utilized. The procedure code H2021 is used extensively, if not excessively, in comparison with other recipients of the other queried providers. This, as well as the H2015 procedure, falls into the category of a service that cannot/has not been clearly defined. Billing in many cases, for both providers, was done for spans of time. In comparison with the other providers this was an anomaly that contributed heavily to confusion in the review by the analyst. This sort of billing may or may not have that purpose in mind. This sort of activity would be normal for an entity attempting to mask un-provided services. Based upon the comparison with other providers of the same type/taxonomy the services provided were excessive.

RECOMMENDATIONS: It is the recommendation of the analyst that reviews be conducted for many of the indicated dates of service. Special attention should be given to the accounting of the services provided for H2021 and H2015. Though there have been several procedures listed in this narrative, examination should not be limited to these as others were identified in the performance and analysis of the queries. A substantial amount of funds have been expended paying for claims filed by these providers. So much so that if records cannot be provided, for various reasons, some consideration could/should be considered for some sort of criminal action based on fraudulent claims.

TOTAL POTENTIAL FOR RECOVERY FROM QUESTIONABLE CLAIMS: $640,477.61

K.L. Kenneaster
Investigative Analyst
092210

p92