# *Attachment 16*

| Case Number:0620 00 10011 - Gibson Condie | Page 1 |
|---|---|

## (PRELIMINARY INVESTIGATION)

This case was opened by the Wyoming Medicaid Fraud Control Unit (MFCU) on July 12, 2010, based on information received from Wyoming Medicaid concerning possible fraudulent billing being submitted to Medicaid by Dr. Gibson B. CONDIE Ph.D., the owner of Big Horn Basin Mental Health Group (BHBMHG). On or about January 29, 2010, the MFCU received a seven (7) page initial Incident Report/Case Referral report from Ms. Christine Bates, Program Integrity Manager with the Office of Healthcare Financing. (ENCLOSURE # 1). The report indicated that Wyoming Medicaid had the following concerns with Dr. CONDIE and the BHBMHG:

Billing using incorrect codes and possible ownership issues -- Medicaid received letterhead from three different companies, but only have one enrolled indicating Dr. CONDIE may have interest in referring patients between facilities. There were also concerns that Dr. CONDIE was billing for more units than was actually documented and billing for services without the proper treatment plans per Medicaid rules.

The MFCU requested further information Wyoming Medicaid may have concerning Dr. CONDIE and BHBMHG, including details of reviews conducted by the Medicaid program in which client records were requested, listings of training extended to providers and the dates including contents of that training, descriptions of any actions taken to confirm the ownership of the BHBBMHG, copies of Contact logs maintained by Medicaid's Fiscal agent ACS, copies of documentation standards which may have been developed and distributed to the provider and dates when such distributions were made, and any other pertinent correspondence or program memorandums directed to either provider which may assist the MFCU with its investigation.

The MFCU received copies of several reports, logs, and other correspondence from the Wyoming Medicaid program in regards to its request. Those documents are not listed as enclosures at this time, but are maintained in the MFCU case file.

## (INTERVIEW/Nathan N. COOK)

On March 3, 2011, SA Smith and Audit Investigator Sharon Kuster returned a telephone call to Nathan N. Cook (DOB: ▮▮/77) at (307) 254-2321. Nathan N. Cook and Chris Addison met with Lisa Brockman, Behavioral Health Services Manager for Medicaid, on March 1, 2011, to report some possible illegal or inappropriate Medicaid billing being perpetrated by Dr. Gibson CONDIE. Lisa Brockman and Nathan N. Cook contacted SA Smith on March 1, 2011, to advise him of the complaint and to have SA

| Report Date | Report of: | Reviewed by & Date: |
|---|---|---|
| March 16, 2011 | SA Greg Smith | |

| Case Number:0620 00 10011 - Gibson Condie | Page 2 |
|---|---|

Smith contact Nathan N. Cook on March 3, 2011, for complete details. During the course of the telephone conversation with Nathan N. Cook on March 3, 2011, he stated substantially as follows:

Nathan Cook holds a Master's Degree in Social Work which he received in 2004 from the University of Utah. Mr. Cook said he and Chris Addison own *Positive Progressions, LLC* (PP). Nathan Cook said he is a Licensed Social Worker and Chris Addison is the Clinical Director of PP. Nathan Cook said that he began receiving reimbursement from Wyoming Medicaid in about October 2006 through Dr. CONDIE'S Medicaid provider number. Nathan Cook said that Dr. CONDIE was his "Medicaid supervisor" until June 2010, at which time Dr. Robert Bayuk became his supervisor and PP began billing under Dr. Bayuk's provider number.

Mr. Cook stated that while Dr. CONDIE was the Medicaid supervisor for PP, all mental health services provided by him or other employees of PP for Medicaid recipients were billed through Dr. CONDIE and his provider number. Nathan Cook said Dr. CONDIE provided little supervision and that was one of the concerns he had had with Dr. Gibson CONDIE. Nathan Cook said when he first began working with Dr. CONDIE, he tried to have weekly meetings with CONDIE, which, according to Mr. Cook, rapidly decreased to every other week and then just a few times per year.

Mr. Cook was asked how the billing was submitted by PP. He stated that based on client progress notes his wife Hillary Cook would submit the client's name, the amount of time spent with the client and type of therapy including individual, family, group, or collateral services to Dr. CONDIE. Nathan Cook described collateral services as assisting a multi disciplinary team work on a client's plan of care. Nathan Cook said that he did not submit diagnosis codes to Dr. CONDIE. Mr. Cook said once the information was submitted to Dr. CONDIE, it was billed by Dr. CONDIE. Nathan COOK said he thought that Dr. CONDIE kept twenty to thirty percent of the money received from Medicaid for supervising and billing for PP. Mr. Cook said most of his client's were Medicaid recipients.

Nathan Cook said that while Dr. CONDIE was his "Medicaid supervisor" he did not know there were CPT codes for in office and community based therapy, believing all codes paid the same. Mr. Cook said he and other PP staff provided therapy services in and out of the office setting. He further advised that Dr. CONDIE did not ask PP therapists if the therapy provided was in the office, or in some other setting. Mr. Cook said there was not a written contract between him and Dr. CONDIE, or collectively through PP, stating all business dealings were just oral agreements.

| Report Date<br>March 16, 2011 | Report of:<br>SA Greg Smith | Reviewed by & Date: |
|---|---|---|

Nathan Cook wanted to disclose that he altered some client progress notes at the direction of Dr. CONDIE. Mr. Cook said that on occasion, Medicaid would not pay for a client's therapy services for a particular month citing that Medicaid may have not have received the clients preapproval or other administrative reasons that prohibited a particular claim from being processed during any given month. Mr. Cook said that he learned that Dr. CONDIE would resubmit the claims with altered dates of service the following month in order to get the claim paid. Mr. Cook said that when Medicaid conducted a records review, Dr. CONDIE would have him change the date of service on the progress notes to correspond with the altered paid claim.

Nathan Cook recalled he altered client ██████████████'s progress notes in 2007 at the request of Dr. CONDIE. Mr. COOK said he did not know how many of ██████'s progress notes he altered, but stated he would fax copies of the altered notes to the MFCU. He further indicated that on ██████████████'s progress notes dated September 13, 2007, the "time in" was altered to make it appear his therapy time did not overlap with another service. He further stated that on ██████████████'s progress notes dated September 5, 2007, the therapy was conducted by Devin Dutson. Mr. Cook indicated he altered the notes from August 5, 2007 to September 5, 2007 and initialed them as Devin Dutson. Nathan Cook said when he altered the notes, he and Devin Dutson were not on speaking term and he could not recall if Devin Dutson was working for PP when the notes were altered.

Mr. Cook said he is qualified to diagnose a client. However, Dr. CONDIE would just ask PP therapists to write a short synopsis of their initial contact with a client and Dr. CONDIE would make and document the diagnosis from the synopsis of the initial interview.

Nathan Cook said he also had concerns about some therapy practices by another mental health and addiction treatment company in Powell, Wyoming, whose therapists were being supervised regarding Medicaid issues by Dr. CONDIE. Mr. Cook said the name of the organization is North West Wyoming Treatment Center (NWWTC). Mr. Cook said he thought NWWTC was formerly owned by Dr. CONDIE, but believes it is now owned by other people including Gregg Bennett and Ty Barris, and possibly others

Mr. Cook said that he was concerned that NWWTC was billing Wyoming Medicaid for recreational therapy when they brought groups of youths together to play sports or lift weights at the gym. Mr. Cook said he heard from other local therapists who said NWWTC staff would have youth play sports or lift weights without any direct supervision. Mr. Cook did not specify who the therapists working for NWWTC were.

## Division of Criminal Investigation
Details of Investigation

Nathan Cook said that he has heard Dr. CONDIE on occasion state something to the effect of "if a client is with a therapist it is therapy".

### (DOCUMENT REVIEW)

On March 3, 2011, the MFCU received a faxed transmission of eighteen (18) pages of a cover letter and PP copies of progress notes for                    for purported services in September 2007. (ENCLOSURE # 2). According to Nathan Cook, all the dates of service were altered, as well as the time on September 13, 2007.

On March 14, 2011, SA Smith received a two page written statement by e-mail from Lisa Brockman outlining her interview with Nathan Cook and Chris Addison on March 3, 2011. (ENCLOSURE # 3).

### (STATUS)

Open.

**Division of Criminal Investigation**
Details of Investigation

| Case Number:0620 00 10011 - Gibson Condie | Page 5 |
| --- | --- |

**(DOCUMENT REVIEW)**

On April 18, 2011, the MFCU received a two page faxed typewritten statement from Nathan Cook outlining his conversation with SA Smith and Audit Investigator Kuster on March 3, 2011.  (ENCLOSURE # 4).

**(STATUS)**

Open.

| Report Date | Report of: | Reviewed by & Date: |
| --- | --- | --- |
| May 18, 2011 | SA Greg Smith | 5/18/11 |

### Division of Criminal Investigation
Details of Investigation

| Case Number:0620 00 10011 - Gibson Condie | Page 6 |
|---|---|

**(INVESTIGATION/DOCUMENT REVIEW)**

On August 23, 2011 the MFCU sent a certified letter to Dr. CONDIE via certified mail. (ENCLOSURE # 5). The letter was a questionnaire to identify how BHBMHG manages its therapist and how it bills for services etc.

On September 6, 2011, the MFCU received a five (5) page response letter from Dr. CONDIE. (ENCLOSURE # 6).

**(STATUS)**

Open.

| Report Date | Report of: | Reviewed by & Date: |
|---|---|---|
| February 7, 2012 | SA Greg Smith | 2/7/12 |

**Division of Criminal Investigation**
Details of Investigation

| Case Number:0620 00 10011 - Gibson Condie | Page 7 |
|---|---|

### (INTERVIEW/DEVIN E. DUTSON)

On February 10, 2012, IA Kuster and SA Smith interviewed Devin E. Dutson telephonically at (307) 254-3407. During the course of the interview, Devin Dutson stated substantially as follows:

Devin Dutson said he is a Licensed Clinical Social Worker with a Masters Degree. He stated he attended Utah Valley College from about 2001 through about 2003 and then received a Bachelor's Degree in social work from the University of Utah in 2007 and a Masters Degree in social work from Berry University in Miami, Florida in 2007.

Mr. Dutson said in about July 2007 he became provisionally licensed in Wyoming to provide mental health services. Those services include individual psychotherapy, group and family counseling, and community based counseling. Mr. Dutson said he rarely uses his office for a counseling setting and estimated ninety-eight percent (98%) of his services are away from his office. He stated that he became fully licensed in about 2008.

Devin Dutson said that he has been supervised by Dr. CONDIE the entire time he has been a mental health professional. Mr. Dutson stated that for the first several months while he was provisionally licensed, Dr. CONDIE provided him more intensified supervision saying that Dr. CONDIE had one-on-one time with him each week and was always available to answer questions. He also stated that Dr. CONDIE instructed him in the proper documentation of services including assessments, developing and writing treatment plans, goals, keeping proper case notes, as well as training in allowable services. Devin Dutson said Dr. CONDIE continues to be available for supervision and occasionally reviews his case notes.

Mr. Dutson said that he submits documentation to Dr. CONDIE about one (1) time per month for billing. Mr. Dutson said that Dr. CONDIE has always submitted his billing. Devin Dutson said that when he is paid for his services, he gets a check from BHBMHG which is owned by Dr. CONDIE. Mr. Dutson said that he practices alone and has had no other business partners.

Devin Dutson said he thought Dr. CONDIE receives fifteen (15) percent of his service revenues for billing for him. He said he does not currently have a written contract with Dr. CONDIE for billing. Devin Dutson said he does not perform any internal audits on his billed services to see if he is overpaid or under paid, but stated he has not observed anything to lead him to believe Dr. CONDIE is keeping more than

| Report Date | Report of: | Reviewed by & Date: |
|---|---|---|
| February 15, 2012 | SA Greg Smith | 2/16/12 |

fifteen (15) percent of his service revenue or is billing for more services than Mr. Dutson submits.

Devin Dutson was asked to describe the process in which he submits patient information to Dr. CONDIE for billing. He said it is computer generated notes like a spread sheet that includes the patient's name, medical identification number, type of treatment and setting, and the amount of time spent with each patient. Mr. Dutson was asked if he submits begin and end times to Dr. CONDIE and he said he does not. He was also asked if he submits the dates of service for each patient and he said he does not. Mr. Dutson stated that on his patient progress sheets or daily therapy notes he does include the beginning and end times and the date of service and that Dr. CONDIE does review them from time-to-time. Mr. Dutson stated that Dr. CONDIE decides what procedural code is billed to Medicaid regarding each patient, based on information submitted to him by Mr. Dutson.

Devin Dutson was asked if he has a Wyoming Medicaid provider number and he said he did. However, he did not know whether Dr. CONDIE was billing using his provider number or Dr. CONDIE's provider number.

Devin Dutson was asked how long a typical therapy session last and he stated that a typical individual therapy session lasts about forty-five (45) minutes, a group therapy session lasts between one (1) hour to one and half (1 1/2) hours and a family session lasts typically for about forty-five (45) minutes.

Mr. Dutson was asked if Dr. CONDIE has ever asked him to falsify records or do anything in which he thought was illegal or inappropriate and he said Dr. CONDIE did not.

### (ADDITIONAL INFORMATION)

On February 10, 2012, IA Kuster ran an MMIS inquiry and learned that Devin Dutson has his own Medicaid provider number ▮▮▮▮09, but his services are billed using Dr. CONDIE's provider number which is an allowable procedure based on Medicaid rules. (ENCLOSURE # 7). IA Kuster also ran inquiries and learned that Dr. CONDIE span bills and would not be required to know exact dates each patient received services for billing purposes.

| Report Date | Report of: | Reviewed by & Date: |
|---|---|---|
| February 15, 2012 | SA Greg Smith |  |

## Division of Criminal Investigation
Details of Investigation

| Case Number:0620 00 10011 - Gibson Condie | Page 9 |
|---|---|

### (INTERVIEW/Michelle L. CROFT)

On March 12, 2012, SA Smith interviewed Michelle L. Croft telephonically at (307) 272-7588. During the course of the interview, Michelle L. Croft stated substantially as follows:

Michelle Croft said she is a Licensed Clinical Social Worker with a Master's Degree. She stated she received her Bachelor's Degree in social work from the University of Wyoming in 2004 and her Master's Degree in Social Work from New Mexico State University in 2009. She said the name of her practice is Level Individual Family Therapy (LIFT). Ms. Croft said that LIFT is located at 440 Nevada Avenue, Lovell, Wyoming 82431.

Ms. Croft said in about September 2009 she became provisionally licensed in Wyoming to provide mental health services. Those services include individual therapy family counseling, and marriage counseling. She said she does do some group therapy, but it involves family members. Ms. Croft estimated at least sixty (60) percent of her therapy is done outside the office.

Michelle Croft said that she has been supervised by Dr. CONDIE since she moved to Wyoming in about September 2009. Mr. Croft stated that for the first year while she was provisionally licensed, Dr. CONDIE provided her more intensified supervision saying that Dr. CONDIE had one-on-one time with her for at least one (1) hour each week and was always available to answer questions. She also stated that Dr. CONDIE instructed her in the proper documentation of services including assessments, developing and writing treatment plans, goals, keeping proper case notes, as well as training in allowable services. Ms. Croft said Dr. CONDIE continues to be available for supervision as needed.

Ms. Croft said that she submits documentation to Dr. CONDIE about one (1) time per month for billing. Ms. Croft said that Dr. CONDIE has always submitted her Medicaid billing. Michelle Croft said that she thought Dr. CONDIE receives fifteen (15) percent of her service revenues for billing Medicaid for her.

Ms. Croft was asked to describe the process in which she submits patient information to Dr. CONDIE for billing. She said it is a form that includes the patient's name, medical identification number, type of treatment, location, date of service and the amount of time spent with each patient. Ms. Croft was asked if she submits begin and end times to Dr. CONDIE and she said she does not. However, she stated she documents begin and end times in her progress notes. Ms. Croft stated that Dr.

| Report Date<br>April 3, 2012 | Report of:<br>SA Greg Smith | Reviewed by & Date: |
|---|---|---|

**Division of Criminal Investigation**
Details of Investigation

| Case Number:0620 00 10011 - Gibson Condie | Page 10 |
| --- | --- |

CONDIE decides what procedure code is billed to Medicaid regarding each patient based on information submitted to him by Ms Croft.

Michelle Croft was asked if she has a Wyoming Medicaid provider number and she said she did not. However, she did say she has an NPI number.

Michelle Croft was asked how long a typical therapy session lasted and she stated that a typical individual therapy session lasts at least one (1) hour unless it is small children then it is less. She stated that on some occasions family therapy sessions may last up to one and a half (1 ½) hours.

Ms. Croft was asked if Dr. CONDIE has ever asked her to falsify records or do anything in which she thought was illegal or inappropriate and she said Dr. CONDIE did not. Ms. Croft stated that she has noticed there seems to be "jealousy" among mental health providers in her area. She gave the example that when she first moved to Wyoming, Nathan Cook tried to get her to work with him. She said Nathan Cook made disparaging statements about Dr. CONDIE, but in her opinion, none of them were true. She seemed to think Nathan Cook was unethical because he would take clients golfing and bowling and call it therapy. Ms. Croft thought Dr. CONDIE was very ethical and honest.

### (INTERVIEW/Matthew Ty BARRUS)

On March 13, 2012, SA Smith interviewed Matthew Ty Barrus telephonically at (307) 254-0575. During the course of the interview, Matthew Ty Barrus stated substantially as follows:

Matthew Barrus said he is a Licensed Clinical Social Worker with a Master's Degree. He stated he attended Brigham Young University and received a Bachelor's Degree in Psychology in about 1996 and received a Master's Degree in Social Work from the University of Wyoming in about 2006.

Mr. Barrus said in about July 2006 he became provisionally licensed in Wyoming to provide mental health services. Those services include adolescent therapy. Mr. Barrus said he became fully licensed in Wyoming in about 2008 and Dr. CONDIE was his supervisor the entire time. He stated that during his provisional license period he met with Dr. CONDIE with one-on-one supervision at least one (1) time per week . Mr. Barrus said he currently provides mental health services for three (3) Medicaid recipients' and Dr. CONDIE continues to monitor those three recipients progress and

| Report Date | Report of: | Reviewed by & Date: |
| --- | --- | --- |
| April 3, 2012 | SA Greg Smith |  |

## Division of Criminal Investigation
Details of Investigation

| Case Number:0620 00 10011 - Gibson Condie | Page 11 |
|---|---|

answer any questions that Mr. Barrus might have.  Mr. Barrus said he works full time for Northwest Wyoming Treatment Center as the Director.  His job duties at the Northwest Wyoming Treatment Center are governed by a board and not by Dr. CONDIE.

Mr. Barrus stated that Dr. CONDIE instructed him in the proper documentation of services including assessments, developing and writing treatment plans, goals, and keeping proper case notes, as well as training in allowable services.  He said he also learned those skills in college.

Matthew Barrus said that he submits documentation to Dr. CONDIE about one (1) time per month for billing.  Mr. Barrus said that Dr. CONDIE has always submitted his billing to Medicaid.  Matthew Barrus said he thought Dr. CONDIE receives ten (10) percent of his service revenues for billing for him.  He said he does not have a written contract with Dr. CONDIE for billing Medicaid services.

Matthew Barrus was asked to describe the process in which he submits patient information to Dr. CONDIE for billing.  He provides Dr. CONDIE notes that include the patient's name, Medicaid identification number, type of treatment and setting, and the amount of time spent with each patient.  Mr. Barrus was asked if he submits begin and end times to Dr. CONDIE and he said he does not.  He was also asked if he submits the dates of service for each patient and he said he does.  Mr. Barrus stated that on his patient progress sheets or daily therapy notes, he does include the beginning and end times and the date of service and that Dr. CONDIE does review them from time-to-time.  Matthew Barrus stated that Dr. CONDIE decides what procedure code is billed to Medicaid regarding each patient, based on information submitted to him by Mr. Barrus.

Matthew Barrus was asked if he has a Wyoming Medicaid provider number and he said he does not.  However, he does have an NPI number, but could not recall what it was during the interview.

Matthew Barrus was asked how long a typical therapy session lasted and he stated that a typical individual therapy session lasts about one (1) hour.  He further stated that all three (3) of his Medicaid patients receive community based services and no in office therapy.

Mr. Barrus was asked if Dr. CONDIE has ever asked him to falsify records or do anything in which he thought was illegal or inappropriate and he said Dr. CONDIE did not.

Mr. Barrus was asked if there were other mental health professionals in his area

| Report Date | Report of: | Reviewed by & Date |
|---|---|---|
| April 3, 2012 | SA Greg Smith | 4/24/12 |

| Case Number:0620 00 10011 - Gibson Condie | Page 12 |
|---|---|

that were jealous of Dr. CONDIE or BHBMHG. Mr. Barrus said he heard that Nate Cook had some kind of "riff" with Dr. CONDIE, but was not sure of the details. SA Smith asked Mr. Barrus if he thought Nathan Cook was unethical or was doing anything illegal in his business, Positive Progressions. Mr. Barrus said he could talk a long time about Nathan Cook, but declined to comment further.

### (INTERVIEW/Janae B. HARMAN)

On March 13, 2012, SA Smith interviewed Janae B. Harman telephonically at (307) 921-2360. During the course of the interview, Janae B. Harman stated substantially as follows:

Ms. Harman said she is a Licensed Professional Counselor with a Bachelor's Degree in Music Education from Brigham Young University in 1989, and received a Masters Degree in Counseling from Idaho State University in 2009.

Ms. Harman said she received her Wyoming provisional licensing supervision from Mark Russler with Cloud Peak Initiatives in 2009. She said she used Dr. CONDIE for Wyoming Medicaid billing from about August 2010 through June 2011. Janae Harman said she works with a large number of children and provides case management, filial therapy, as well as adult mental health services for Medicaid recipents.

Ms. Harman said she would send Dr. CONDIE Medicaid billing information about one (1) time per month in a "basic letter" form. She recalled that Dr. CONDIE required the patient name, type of therapy, therapy location, amount of time she spent with the patient, and the date the therapy was provided. However, she stated Dr. CONDIE did not require her to submit the patient diagnosis.

Ms. Harman stated that she thought Dr. CONDIE charged her either twelve (12) percent or fifteen (15) percent for billing her Medicaid clients. She said she changed to Esther Seville of Cody, Wyoming as her Medicaid billing supervisor because she likes Seville's style of supervision better. Ms. Harman said that Dr. CONDIE was always approachable and answered her questions. However, she said she was new to the Medicaid system and likes a supervisor who expounds on the topic when she asks a question. She said even though Dr. CONDIE was always available to answer questions, he would not go beyond the question being asked. Ms. Harman said she lives in Worland, Wyoming and Dr. CONDIE had supervisory meetings in the middle of the week and she was not able to make most of those meetings because she would

| Report Date | Report of: | Reviewed by & Date |
|---|---|---|
| April 3, 2012 | SA Greg Smith | |

## Division of Criminal Investigation
Details of Investigation

| Case Number:0620 00 10011 - Gibson Condie | Page 13 |
|---|---|

have to clear her schedule for the entire day.

Janae Harman said a typical therapy sessions lasts between fifty (50) to sixty (60) minutes. She said that while she was supervised by Dr. CONDIE she estimated that half (1/2) her services were community based and the other half (1/2) were in office services.

Ms. Harman said Dr. CONDIE did not ask her to do anything illegal or inappropriate.

**(STATUS)**

Open

| Report Date<br>April 3, 2012 | Report of:<br>SA Greg Smith | Reviewed by & Date: |
|---|---|---|

## Division of Criminal Investigation
Details of Investigation

| Case Number:0620 00 10011 - Gibson Condie | Page 14 |
|---|---|

**(INVESTIGATION/DOCUMENT REVIEW)**

On August 23, 2011, the MFCU sent a two (2) page information request letter to Dr. CONDIE requesting him to answer some specific questions.  (ENCLOSURE # 7).

In September 2011, MFCU received a five (5) page response letter from Dr. CONDIE with his response to the specific questions.  (ENCLOSURE # 8).  The letter was dated September 1, 2011.  On the fourth page of the letter, Dr. CONDIE replied to the seventh MFCU question as follows:

"7. Medicaid historical payment records indicate you bill a significant amount of services under procedure code H2021 – Community–based individual/family therapy services.  Please describe what activities are typically conducted when billing this code."  Dr. CONDIE's response is as follows:

"Services provided under procedure code H2021 include all of the services listed in # 1 above with the exception of assessments.  After speaking with the therapist about this question I have learned that I have incorrectly billed a number of hours of H2021 which should have billed as H2019. Two therapists in private practice have been providing therapy to adolescents at the addiction treatment center and therefore outside of the therapists' offices.  Unknown to me was that some months ago these therapists became part time employees of the treatment center with offices on site.  The number of H2021 hours that were incorrectly billed on behalf of these therapist will be determined and the $25 difference per hour between the procedure codes will be refunded to Medicaid."

On August 2, 2012, the MFCU sent Dr. CONDIE a two (2) page letter asking him to respond to a few additional questions based on his response letter in Enclosure # 8.  (ENCLOSURE # 9).  The MFCU asked Dr. CONDIE to provide documentation to show that he repaid the false billing for procedure code H2021. The MFCU did not receive a response from Dr. CONDIE and issued a subsequent letter on September 14, 2012, again requesting a response.  (ENCLOSURE # 10).

On October 2, 2012, the MFCU received a one (1) page letter from Dr. CONDIE dated September 27, 2012.  (ENCLOSURE # 11).  In the letter, Dr. CONDIE addressed the question of incorrect billing of procedure code H2021 as follows:

"The hours which I had thought to have been incorrectly billed were therapy hours provided by supervisees to inpatient clients of a local adolescent substance abuse treatment center.  The hours in question, which I had thought to have been

| Report Date | Report of: | Reviewed by & Date: |
|---|---|---|
| November 20, 2012 | SA Greg Smith | |

## Division of Criminal Investigation
### Details of Investigation

| Case Number:0620 00 10011 - Gibson Condie | Page 15 |
|---|---|

provided in the practitioners' offices were actually provided in the school and residential quarters of the treatment center or in an off-site setting such as a city park or mountain retreat.  These hours then appear to meet the criteria for community-based therapy."

### (INTERVIEW/Gibson CONDIE)

On Friday, October 19, 2012, SA Smith and IA Kuster interviewed Dr. Gibson CONDIE telephonically at (307) 754-3860 to clarify his answers in his October 2, 2012 response letter.  During the course of the interview, Dr. Gibson CONDIE stated substantially as follows:

Dr. CONDIE stated that in about April 2009, the Northwest Wyoming Treatment Center (NWTC) in Powell, Wyoming opened as a not-for-profit adolescent residential drug treatment center.  He said NWTC has a board of directors with Joe Bridges as the Chairman of the Board, Ty Barrus as the Director, and Gregg Bennett as the Clinical Director.  He further stated that in about March 2010, Devin Dutson became an employee of NWTC.  These were the therapists in which he referred to in his first letter Enclosure # 8.  Dr. CONDIE said he was the supervising clinician for NWTC and submits it's Wyoming Medicaid billing.

Dr. CONDIE stated that he spoke with Barrus, Bennet, and Dutson about the locations in which services are provided.  Dr. CONDIE told IA Kuster and SA Smith that Barrus, Bennett, and Dutson said that approximately 95% of the service were provided away from the NWTC such as the college or the park because they were teaching life skills within the community.  Therefore, he believed the services would qualify for community based treatment.  Dr. CONDIE further stated that up until he received the information request letter from the MFCU in August 2011, he had not required the location of the therapy be documented by his therapists.  However, he said that after he received the information request letter, he now requires the location of the therapy to be documented.  Dr. CONDIE stated that each therapist is responsible for maintaining their own documentation and that he reviewed that documentation approximately "quarterly".

### (STATUS)

Open.

| Report Date | Report of | Reviewed by & Date |
|---|---|---|
| November 20, 2012 | SA Greg Smith | 7 |



# *Office of the Attorney General*

| | | |
|---|---|---|
| **Governor** | Medicaid Fraud Control Unit | **Chief Deputy Attorney General** |
| Matthew H. Mead | 2424 Pioneer Avenue, 4ᵗʰ Floor | Peter K. Michael |
| | Cheyenne, Wyoming  82002 | |
| **Attorney General** | 307-777-3444 Telephone | **Director** |
| Gregory A. Phillips | 307-777-5094 Fax | Christine Cox |
| | 1-800-378-0345 Toll Free | |

Certified Mail

August 23, 2011

Gibson Condie, Ph.D.
Big Horn Basin Mental Health Group
1054 Vali Road
Powell, WY  82435

RE:  Information request

Dear Doctor Condie:

The Wyoming Attorney General's Office, Medicaid Fraud Control Unit (MFCU), pursuant to 42 Code of Federal Regulations (C.F.R.) §1007 *et seq.*, is charged with receiving allegations of Medicaid provider fraud, abuse, or neglect of patients in Medicaid-funded facilities, as well as, misappropriation of patients' funds.  MFCU investigates such allegations, and when appropriate, prosecutes or assists in the prosecution of such cases.  MFCU works with federal, state and local agencies, prosecutors and law enforcement to provide training and to develop mechanisms for the effective detection and prosecution of Medicaid fraud and abuse in Wyoming.  The Wyoming MFCU is an exempt entity under the Health Insurance Portability and Accountability Act (HIPAA) and is therefore authorized to receive any and all healthcare and/or billing/payment information regarding Medicaid recipients.

Within the scope of the authority granted to our office through federal regulations, we are requesting a written response to the following questions as related to the services you provide and bill to the Medicaid program.  Your written response is requested within fifteen (15) days of receipt of this letter.

Wyoming MFCU
Enclosure No. 7
Case No. 0626 00 1001
Page 1 of 2

1. Please provide a brief summary of the types of services Big Horn Basin Mental Health Group provides to Medicaid recipients.

2. How many therapists on average do you employ or contract with to provide services to Medicaid recipients?  Please provide a list of the names, addresses and telephone numbers of the therapists you employed or contracted with from January 1, 2009 through June 30, 2011.

3. What types of training do you provide to your therapists to assure compliance with Medicaid regulations?

4. Do you utilize a standardized format for documenting services (i.e. progress notes)?  If yes, please provide a blank copy of the form employed.

5. What level of supervision do you utilize to monitor your therapists and patient progress?

6. Where do your therapists typically conduct their patient sessions?  Approximately what percentage of their sessions would you estimate are conducted outside the office setting?

7. Medicaid historical payment records indicate you bill a significant amount of services under procedure code H2021 – Community-based individual/family therapy services.  Please describe what activities are typically conducted when billing this code.

8. Medicaid records indicate you provide service to a number of children under the age of 5 years, often to children as young as 2.  What types of therapies are typical for this age?  Please be more specific rather than citing the codes billed.

9. Please provide the name of the person/company that submits your claims to the Medicaid program.  If this person has changed since January 1, 2009, please provide the names of each individual who has performed this function.  What type of professional coding training has this person received?  Does this person make the determination of what procedure codes to bill?  If not, who does?

Thank you in advance for your timely response to this information request.  Again, your response is requested within fifteen (15) day of receipt of this letter.

Sincerely,

Sharon Kuster
MFCU Investigative Auditor

Gibson Condie, Ph.D. – Information Request
August 23, 2011
Page 2 of 2

Wyo.
Enclosure No. ___
Case No. C670 OD /DO/I
Page 1 of 2



Gibson B. Condie, Ph.D.

**Big Horn Basin**

Mental Health Group

September 1, 2011

Ms. Sharon Kuster
MFCU Investigative Auditor
2424 Pioneer Avenue, 4th Floor
Cheyenne, WY 82002



Dear Ms. Kuster,

I am in receipt of your letter dated August 23, 2011 requesting information regarding the delivery of services by the Big Horn Basin Mental Health Group (BHBMHG) to Medicaid recipients. I appreciate having the opportunity to respond to the questions posed and will welcome any feedback that your office may have following receipt of this letter.

1. **Please provide a brief summary of the types of services Big Horn Basin Mental Health Group provides to Medicaid recipients.**

BHBMHG is a loose association of mental health professionals, each of whom has their own full or part time private practice. Services provided by these practitioners include individual and group psychotherapy, family/filial therapy, marriage counseling, residential and outpatient addiction treatment, play and recreation therapy, and a full range of psychological testing services. Over the years the members of the group have organized and staffed two group homes for court-placed youth (DFS certified) with 10 bed capacity and four crisis beds. An inpatient substance abuse treatment center with 15 bed capacity (certified by the Department of Health) has also been built and staffed with credentialed professionals.

2. **How many therapists on average do you employ or contract with to provide services to Medicaid recipients? Please provide a list of the names, addresses, and telephone numbers of the therapists you employed or contracted with from January 1, 2009 through June 30, 2011.**

On average there are 10 therapists working under the auspices of BHBMHG. These include the following:

Greg Bennett, MS, LAT

Powell, WY 82435
307.254.2038

Megan Garza, MS, LPC

Lovell, WY 82431
307.272.3637

Wyoming DCI
Enclosure No. 3
Case No. 0620 00/00/1
Page 1 of 5

**Big Horn Basin**
Mental Health Group

Gibson B. Condie, Ph.D.

*Bryan Mickelson, Ph.D.

Powell, WY  82435
307.272.5368

Gerry Burton, MS, LPC

Lovell, WY  82431
307.272.4972

Jan J. Brinkerhoff, MS, PLCSW

Powell, WY  82435
307.254.1373

Matthew McNiven, MS, LPC

Burlington, WY  82411
307.272.9224

**Nate Cook, MS, LCSW

Powell, WY  82435
307.254.2321

Devin Dutson, MS, LCSW

Powell, WY  82435
307.254.3407

**Janae Harmon, MS, LPC

Worland, WY  82401
307.921.2360

M. Ty Barrus, MS, LCSW

Powell, WY  82435
307.254.0575

Michele Croft, MS. LCSW

Lovell, WY  82431
307.272.7588

*Dr. Mickelson is a resident and will be assisting with supervision once he is fully licensed later this year.
**Denotes therapists who are no longer working under the supervision or auspices of BHBMHG.

### 3. What types of training do you provide to your therapists to assure compliance with Medicaid regulations?

Each therapist is inserviced individually on Medicaid regulations prior to any billing for services provided.  This training includes how to properly document assessments, developing and writing the treatment plan and treatment goals, keeping proper case notes, and allowable services.  This inservice is reviewed annually during group supervision which is described in #5 below.



Gibson B. Condie, Ph.D.

**4. Do you utilize a standardized format for documenting services (i.e. process notes)?  If yes, please provide a blank copy of the form employed.**

No, there is not a standardized form for documenting services.  Each therapist has their own format for documentation.  I have trained them that, specific to the process notes, each page of notes must have the patient's name, date of service, start and stop times, a brief description of the session content, and the specific treatment goal that was worked on in session.  I have also trained them that all records must be kept for six years and that while electronic storage of records is permissible, in the event of an audit hard copies of documents must be provided and that each page of documents must have an original signature by the therapist.

**5. What level of supervision do you utilize to monitor your therapists and patient progress?**

In the case of seven of the above named therapists I provided weekly individual supervision for 12 to 15 months of their initial practice.  This level of supervision is afforded all provisionally licensed professionals.  I am then available to each therapist for individual supervision via telephone or face-to-face meetings as they feel the need.  I also have twice monthly group supervision sessions at which specific cases are presented and feedback provided by myself and the other therapists in the group.  In addition, several of these therapists receive supplemental supervision from professionals who specialize in a particular form of therapy.

**6. Where do your therapists typically conduct patient sessions?  Approximately what percentage of their sessions would you estimate are conducted outside the office setting?**

After receiving your request for information I spoke with the therapists involved about where they meet with Medicaid clients. I would estimate that 95% of sessions take place outside of an office (please see my response to #7 below).  Rationale provided by the therapists include 1) the desirability of seeing clients in the setting where they are dealing with depression, addiction, intrafamily conflict, caring for high needs children, etc.; 2) local school districts prefer that youth and adolescents be seen at the school rather than leaving campus for appointments; 3) attendance at appointments is significantly higher when the appointment is taken to the client; 4) the majority of Medicaid recipients in this area do not have reliable transportation and most of those appointments taking place in the office require the practitioner to pick the client up and transport them to the office and then back, following the appointment; 5) Medicaid compensation rates for community-based services are higher and therefore closer to the rates paid by other insurers.



Gibson B. Condic, Ph.D.

**7. Medicaid historical payment records indicate you bill a significant amount of services under procedure code H2021 - Community-based individual/family therapy services. Please describe what activities are typically conducted when billing this code.**

Services provided under procedure code H2021 include all of the services listed in #1 above with the exception of assessments. After speaking with the therapists about this question I have learned that I have incorrectly billed a number of hours of H2021 which should have billed as H2019. Two therapists in private practice have been providing therapy to adolescents at the addiction treatment center and therefore outside of the therapists' offices. Unknown to me was that some months ago these therapists became part time employees of the treatment center with offices on site. The number of H2021 hours that were incorrectly billed on behalf of these therapists will be determined and the $25 difference per hour between the procedure codes will be refunded to Medicaid.

**8. Medicaid records indicate you provide service to a number of children under the age of 5 years, often to children as young as 2. What types of therapies are typical for this age? Please be more specific rather than citing the codes billed.**

There really are not therapies that are "typical" for children in this age group but all of the children this young being seen by therapists with BHBMHG fall into an "atypical" category. Some of these children witnessed the murder of their pregnant mother at the hands of their father. They now reside with their maternal grandparents but there has been considerable conflict with the paternal grandparents who reside in a nearby community. The legal system has required ongoing treatment of these children because of the severity of the case. Other children in this age group are the offspring of developmentally delayed parents and so a considerable amount of play and filial therapy, in conjunction with the parents, is being provided to encourage the achievement of developmental milestones and to lower the risk of neglect. Still other children are living in an environment of high risk for abuse and a request has been made of the therapist to see the child (and siblings) in the home both to provide services and to help monitor the home environment.

After receiving your letter I reviewed the billing records of young children and found that one of these cases has been billed erroneously. Services were provided to the child's mother, but the child's name and Medicaid number were incorrectly entered into WINASAP. I've corrected the error in WINASAP and would seek your input as to how to correct the billing to reflect that services were provided to the mother and not to the child.



Gibson B. Condie, Ph.D.

**9. Please provide the name of the person/company that submits your claims to the Medicaid program.  If this person has changed since January 1, 2009, please provide the names of each individual who has performed this function.  What type of professional coding training has this person received?  Does this person make the determination of what procedure codes to bill?  If not, who does?**

The person who submits claims to Medicaid is myself and this has always been the case.  The professional coding training that I've received has been that which is available to me when I call EqualityCare with questions.  Also, Ms. Amy Buxton has been in my office on two occasions and she has been helpful in responding to billing questions.  Each therapist submitting billing information to me identifies hours of therapy versus hours of collateral services (H0031) and they alone make that determination.

The experience of receiving a letter from the Medicaid Fraud Control Unit is somewhat startling and in my case has caused me to closely and seriously review the issues raised by your questions.  If there are further questions that I can address for the MFCU I would be happy to do so.  I would also invite you or a representative from your office to meet with our group here in Powell to review first hand the services and places of service that we provide.  Should there be any changes in practice that the MFCU would recommend we would certainly implement those changes immediately as we highly value and wish to protect the relationship with Medicaid.  Our group prides itself on providing services to a clientele that has, historically, gone underserved or without service here in the communities of the Big Horn Basin and we wish to continue.  We look forward to hearing from you.

Sincerely,

Gibson B. Condie, Ph.D.
Big Horn Basin Mental Health Group

Wyoming DCI
Enclosure No. 8
Case No. _____ 1100
Page 5 of 5

307-254-0000 • 1054 Vali Road • Powell, Wyoming 82435



# *Office of the Attorney General*

| | | |
|---|---|---|
| **Governor**<br>Matthew H. Mead | Medicaid Fraud Control Unit<br>123 State Capitol<br>Cheyenne, Wyoming 82002<br>307-777-3444 Telephone<br>307-777-5094 Fax<br>Certified Mail<br>August 2, 2012 | **Chief Deputy Attorney General**<br>Peter K. Michael |
| **Attorney General**<br>Gregory A. Phillips | | **Director**<br>Christine Stickley |

Gibson B. Condie, Ph.D.
Big Horn Basin Mental Health Group
1054 Vali Road
Powell, WY 82435

Dear Dr. Condie:

   The Medicaid Fraud Control Unit (MFCU) has almost completed its review of issues that fall within our authority as found within 42 Code of Federal Regulations § 1007 et seq as outlined in our letter dated August 23, 2011. We have not at this time identified any fraudulent activity and any potential violations of program policy will be referred to the Medicaid program for possible administrative action. The Medicaid program will contact you should it determine such action is to be pursued. However, within the MFCU's investigative and prosecutorial authority relating to allegations of fraud or abuse by a Medicaid provider, we have a few additional comments and questions which we appreciate your consideration and immediate attention before we may complete our investigation.

   1. Supervision of non-enrolled healthcare practitioners.

   Our August 23, 2011 letter requested information that focused upon how the therapists associated with your Group are trained to comply with Medicaid regulations. As permitted by these regulations, you have enrolled with the Medicaid program as the supervising practitioner under whose Medicaid enrollment number is used for billing purposes by these non-enrolled therapists. Fiscal responsibility and documentation integrity for claims billed by these practitioners remain with you as the enrolled supervising provider. During our review, it was determined that these therapists are not actual employees of the Group and basically utilize your provider number solely for billing

**Gibson Condie – Information Request**
**August 2, 2012**
**Page 1 of 2**

Wyoming DCI
Enclosure No. 9
Case No. 06 20 00 1/00 1 1
Page ___1___ of 2

purposes. While you assure they receive training and ongoing supervision regarding Medicaid policies, our experience in these situations has consistently identified failures to comply with policies which at a minimum result in identification of overpayments. These overpayments are then assessed to the supervising provider because this individual is also the pay to provider. Should fraud be identified, both the supervising and treating provider could be held accountable in a criminal prosecution situation. While the MFCU has not at this time identified any fraudulent activity, we are simply advising you of the risks associated with allowing non-employees access to your Medicaid ID for billing purposes.

    2. Incorrect billing of procedure code H2021.

Your response to our initial letter indicated you had identified a number of incorrectly billed hours. You indicated the Medicaid program would be reimbursed for these overpayments. Please supply confirmation of the repayments you have initiated. We would appreciate this information by patient and dates of service. The MFCU requests your response within fifteen (15) days of receipt of this letter. Should our review of your response be determined satisfactory, we anticipate no further review of this case at this time.

    3. Incorrect billing of services to patient's mother.

You have requested information as to how best to correct this type of incorrect billing. Please contact Medicaid's fiscal agent, ACS, at 1-800-251-1268.

We appreciate your cooperation with our review. The MFCU understands that when we contact a provider to initiate an investigation it can be quite distressing. Our investigations do not always result in pursuit of criminal charges and we are pleased when our reviews reveal providers diligently follow Medicaid policies which in turn results in the vulnerable Medicaid population to receive the quality care they deserve.

Sincerely,

Christine Stickley
MFCU Director

sk

Wyoming DCI
Enclosure No. 9
Case No. 0620 00110/1
Page 2 - 7



# *Office of the Attorney General*

| **Governor**<br>Matthew H. Mead | Medicaid Fraud Control Unit<br>2424 Pioneer Avenue, Suite 402<br>Cheyenne, Wyoming 82002<br>307-777-3444 Telephone<br>307-777-5094 Fax | **Chief Deputy Attorney General**<br>Peter K. Michael |
|---|---|---|
| **Attorney General**<br>Gregory A. Phillips | | **Director**<br>Christine Stickley |

Certified Mail
September 14, 2012

Gibson B. Condie, Ph.D.
Big Horn Basin Mental Health Group
1054 Vali Road
Powell, WY 82435

Re: Follow-up to August 2, 2012 Information Request
Letter

Dear Dr. Condie:

On August 2, 2012, our office forwarded to you via certified mail a letter outlining our investigative findings and a request for information (please see enclosed copy). The return receipt indicated your office received this letter on August 6, 2012. Item 2 of this letter stated:

"2. Incorrect billing of procedure code H2021.

Your response to our initial letter indicated you had identified a number of incorrectly billed hours. You indicated the Medicaid program would be reimbursed for these overpayments. Please supply confirmation of the repayments you have initiated. We would appreciate this information by patient and dates of service. The MFCU requests your response within fifteen (15) days of receipt of this letter. Should our review of your response be determined satisfactory, we anticipate no further review of this case at this time."

To date, our office has yet to receive a response to this request. Our issue is that you have confirmed that claims were inappropriately billed using procedure code H2021 which pays $28.00 per 15-minute unit. These claims should have been paid using procedure code H2019 which pays $21.75 per 15-minute unit. This results in you receiving an overpayment of $6.25 per 15-minute unit. While you have previously confirmed claims were incorrectly billed, however, once the errors

Page 1 of 2



**Report Medicaid Fraud**
**Call Now**
**1-800-378-0345**

August 14, 2012

Enclos: _____ /0
Case No. 0620 or 11024
Page ___1___ 2

have been identified, a provider has the responsibility to timely make corrections to their billings and repay any overpayments to the Medicaid program. Failure to make appropriate restitution to the program may be considered fraud and may result in criminal prosecution.

Specifically, Chapter 1 of the Medicaid rules defines "overpayments" as follows:

> "Overpayments." Medicaid funds received by a provider or client to which the provider or client is not entitled for any reason including payments which exceed the Medicaid allowable payment.

Chapter 1 also defines "fraud" as follows:

> "Fraud." An intentional deception or misrepresentation made by an individual with the knowledge that the deception or misrepresentation may result in overpayments. "Fraud" includes any actions or **inactions** *(emphasis added)* that constitute fraud under federal or state law.

As stated in our August 2, 2012 letter, our office requests written verification that you have initiated corrections to the billing errors you have identified. We require your response to this follow-up request within fifteen (15) days of receipt of this letter. Failure to respond to this follow-up information request may result in the Medicaid Fraud Control Unit taking further action in this case.

If you have any questions, please do not hesitate to contact our office.

Sincerely,

Christine Stickley
MFCU Director

CS/sk

Enclosure

August 14, 2012



**Report Medicaid Fraud**
**Call Now**
**1-800-378-0345**

Enclosure .   *10*
Case No. *0620  00 11001*
Page  *2*  of  *2*



Gibson B. Condie, Ph.D.

**Big Horn Basin**
Mental Health Group

September 27, 2012

Christine Stickley
MFCU Director
Wyoming State Attorney Generals Office
2424 Pioneer Avenue, Suite 402
Cheyenne, WY 82001

RE: Follow-up to August 2, 2012 Information Request Letter

Dear Ms. Stickley,

I am in receipt of both your letter of August 14, 2012 and the referenced letter of August 2, 2012 and wish to apologize for my failure to respond to the first letter. I certainly wish that I had a good excuse, or even a bad one, but such is not the case. Please let me respond to each of the three items listed in the letter of August 2nd.

1 - Supervision of non-enrolled healthcare practitioners.

Those whom I supervise wish, at this time, to remain as private practitioners rather than employees of Big Horn Basin Mental Health Group. However none of the individuals does their own billing under the BHBMHG provider number. All billing is submitted to me in writing and I personally then do the billing for each client. At no time during my supervision of other mental health care providers have I ever allowed anyone to have use of my NPI or to bill Medicaid using that number.

2 - Incorrect billing of procedure code H2021.

The hours which I had thought to have been incorrectly billed were therapy hours provided by supervisees to inpatient clients of a local adolescent substance abuse treatment center. The hours in question, which I had thought to have been provided in the practitioners' offices were actually provided in the school and residential quarters of the treatment center or in an off-site setting such as a city park or mountain retreat. These hours then appear to meet the criteria for community-based therapy.

3 - Incorrect billing of services to the patient's mother.

I will contact ACS to determine how they wish me to document this change in billing.

Thank you for the reminder letter and please accept my apology once again that such a letter was necessary.

Sincerely,

Gibson B. Condie, Ph.D., Director
Big Horn Basin Mental Health Group

Wyoming DCI
Enclosure No. 11
Case No. 0620-0 1/001
Page ___ of ___

307-254-0000 • 1054 Vali Road • Powell, Wyoming 82435



**Supervising Physicians & Psychologists Billing Wyoming Medicaid**



Home | HIPAA 5010 | Forms

# Supervising Physicians and Psychologists Billing Wyoming Medicaid

Attention Physicians and Psychologists supervising and billing to Wyoming Medicaid for the following types of providers:

Sign In | Update Yo...

⊕ F A...
⊕ ...
⊕ Lin...
⊕ **Web Por**ta...
⊕ **Provider Training**

| 101Y00000X | Licensed Professional Counselors (LPC), Provisional Professional Counselor (PPC), Certified Mental Health Worker |
| --- | --- |
| 101YA0400X | Licensed Addictions Therapist (LAT), Provisional Licensed Addictions Therapist (PLAT), Certified Addictions Practitioner (CAP) |
| 1041C0700X | Licensed Clinical Social Worker (LCSW), Certified Social Worker (CSW), Master of Social Worker (MSW) with Provisional License (PCSW) |
| 106H00000X | Licensed Marriage and Family Therapist (LMFT), Provisional Marriage and Family Therapist (PMFT) |

Wyoming Medicaid is now requiring enrollment of the above individual treating providers (individual who actually rendered the service) of behavioral health services (mental health/substance abuse treatment) who are working under the supervision of a psychologist or physician/psychiatrist. This enrollment effort is part of a project to recognize and enroll all behavioral health providers who are providing a Medicaid-covered behavioral health service. All such providers will be required to enroll and bill with accurate treating providers, no longer using the supervising physician/psychologist's NPI, but instead billing with the correct NPI belonging to the treating provider, and using appropriate CPT/HCPCS codes allowed for their taxonomy.

Under the Health Insurance Portability and Accountability Act of 1996 (HIPAA), provider of Medicare and Medicaid services were required to obtain a National Provider Identifier (NPI) in October of 2007. They will need their NPI number to complete their enrollment with Medicaid. To apply for an NPI, refer to the NPPES website https://nppes.cms.hhs.gov/NPPES/Welcome.do. If the taxonomy selected when they obtained their NPI number differs from the NPI recognized by Medicaid, select the taxonomy that most closely matches their specialty from the list of Medicaid-recognized taxonomies contained within the enrollment application.

- Providers affected by this requirement have six (6) months from the date of this policy notification to enroll.
- A post-payment review of claims will be conducted to assure compliance with the new enrollment and billing requirement.
- Services provided by a licensed mental health professional who is working under the supervision of a physician/psychiatrist will no longer require the AJ modifier as the treating provider's taxonomy will generate payment at the correct rate.

Multiple treating providers can be indicated on a single claim by using the correct NPI for each service line

item billed, either on an electronic 837P claim or a CMS 1500 paper claim form.

Currently, these new taxonomies are not available for enrollment via the online Web Enrollment application. In order to enroll your treating providers (supervised staff) with your group, send an email to WYACSPROVIDERCLIENTSVCS@ACS-INC.COM requesting a copy of the paper enrollment, and one will be emailed to you in an Adobe PDF format.

If you are currently enrolled as an individual, and not as a group, you also need to complete an enrollment application to create a group with Wyoming Medicaid.

For any questions related to processing a new enrollment, contact Provider Relations at 800-251-1268; press option 2, then 1, then 2.

- Don't wait until the last possible moment to complete the treating or group enrollment applications
- Enrollments are completed in the order that they are received

# DEADLINE – NOVEMBER 2012