ERIC J. HEIMANN
WSB No. 6-4504
Assistant United States Attorney
District of Wyoming
P.O. Box 668 Cheyenne, WY 82001
(307) 772-2124
Eric.Heimann@usdoj.gov

TRAVIS J. KIRCHHEFER
WSB No. 6-4279
Special Assistant United States Attorney
Medicaid Fraud Control Unit
Wyoming Attorney General's Office
2320 Capitol Avenue, Cheyenne, WY 82002
(307) 777-3444
Travis.Kirchhefer@wyo.gov

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| Plaintiff, | **Case No. 19-CR-171-J** |
| **v.** | |
| **MATTHEW TY BARRUS, GREGORY J. BENNETT, and DEVIN E. DUTSON,** | |
| Defendants. | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE EXPERT TESTIMONY

Defendants seek to exclude expert testimony from their jury trial. *Mot. to Exclude Expert Test.*, Doc. 173. The United States of America, by and through Assistant United States Attorney Eric Heimann and Special Assistant United States Attorney Travis J. Kirchhefer, opposes the motion.

Between April 2009 and August 2016, Northwest Wyoming Treatment Center (NWTC) operated a residential substance abuse treatment program for adolescents in Powell, Wyoming. During this time, defendant Matthew Ty Barrus was NWTC's executive director, defendant Greg

Bennett was NWTC's clinical director, and defendant Devin Dutson was employed by NWTC as a therapist. In September 2019, the grand jury returned an indictment charging the defendants with healthcare fraud conspiracy, healthcare fraud, and spending fraud proceeds. (Doc. 1.) As alleged in the indictment, the defendants caused NWTC to submit to Wyoming Medicaid approximately $8.5 million in claims for alleged substance abuse and mental health treatment provided through the residential substance abuse treatment program. The claims were fraudulent for a number of reasons, including that almost all of the billed-for activities were not covered by Medicaid and most were not provided by licensed treatment providers.

The government designated four expert witnesses: Ms. Lisa Brockman, Ms. Brenda Stout, Ms. Cody Livingston, and Mr. Brad Bell. *Govt's Expert Designation*, Doc. 153. Ms. Lisa Brockman and Ms. Brenda Stout are employed by the Wyoming Department of Health and were responsible for Wyoming Medicaid's substance abuse and mental health programs at different points in the charged conspiracy and fraud. Ms. Livingston is employed by the Wyoming Attorney General's Office as an investigative auditor in the Medicaid Fraud Control Unit (MFCU). These witnesses (the Medicaid Program Experts) were designated to describe Wyoming Medicaid generally and as it covers substance abuse and mental health services in particular, and then give opinions about the application of Medicaid's rules to the claims submitted by the defendants. Mr. Bell is a forensic accountant employed by the FBI. He was designated to testify about the movement of money from Wyoming Medicaid through NWTC's bank accounts to the defendants.

The defendants demand that the government's proffered expert testimony be excluded because the Medicaid Program Experts are unqualified, and the designation is insufficient as to all four experts. We summarize the rules governing expert testimony and then explain why the defendants' motion should be denied.

"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." FED. R. EVID. 702. "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed," including facts and data that are not admissible as evidence. FED. R. EVID. 703. "An opinion is not objectionable just because it embraces an ultimate issue." FED. R. EVID. 704(a). But, "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense." FED. R. EVID. 704(b).

Rule 702 "requires courts to assess the reliability of expert testimony based on scientific, technical, or 'other specialized knowledge' before admitting it." *United States v. Roach*, 582 F.3d 1192, 1206 (10th Cir. 2009), citing *Daubert*, 509 U.S. at 589 and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). "[A] district court may satisfy its so-called gatekeeping function by ruling on a Rule 702 objection at trial, so long as the court has sufficient evidence to perform the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Roach*, 582 F.3d at 1206 (cleaned up).

**1. The Medicaid Program Experts are properly designated to testify regarding the Medicaid program and application of Medicaid's rules to the claims submitted by the defendants.**

The defendants claim that expert testimony from Ms. Brockman, Ms. Stout, and Ms. Livingston must be excluded because they "are unqualified to render expert opinions regarding the

medical necessity or therapeutic value of the treatment [NWTC] offered." *Mot. to Exclude Expert Test.* at 2 and 9 ("none of the State employees listed by the Government are qualified to render proper opinions as to 'medical necessity' or the 'therapeutic value' of the services NWTC provided as part of its residential treatment of Wyoming youth suffering from addiction and other mental health issues"). The defendants admit, however, these witnesses can testimony about the Medicaid program and how it functions. *Id.* at 3 and 13 ("The state-employee witnesses here may be able to testify generally about Wyoming Medicaid as a factual matter...."). The defendants' arguments fail because they misunderstand what qualifies as expert testimony regarding a regulatory program like Medicaid.

The expert-testimony rules apply to witnesses who have specialized knowledge of complex regulatory programs such that they must be designated as experts under Rule 702. *United States v. Richter*, 796 F.3d 1173, 1194-95 (10th Cir. 2015) (testimony regarding Colorado's hazardous waste program and regulations was expert testimony governed by Rule 702); *United States v. White*, 492 F.3d 380, 399-404 (6th Cir. 2007) (testimony regarding Medicare was expert testimony because it was based on knowledge of "a complex and intricate regulatory scheme … acquired over years of experience") (cited in *Richter*).

Here, the government designated the Medicaid Program Experts to opine that:

> **(1)** activities described in progress notes and supervision sheets created by the Defendants and NWTC employees at the direction of the Defendants describe non-covered services for which Wyoming Medicaid would not pay; **(2)** procedure codes H0005, H0047, H2015, and H2015-HK used by the Defendants and NWTC employees at the direction of the Defendants to bill these non-covered services did not accurately describe these activities such that Medicaid could determine whether the services were covered; **(3)** Wyoming Medicaid would not have paid for these activities if the program had known their true nature; and **(4)** the services NWTC billed under procedure code H2021 did not qualify as H2021 community mental health treatment, and Medicaid would not have paid these bills if the program had known the true nature of the billed-for services.

*Govt's Expert Designation* at 5-6 (Brockman), 7 (Stout) and 9 (Livingston). These opinions relate to how Wyoming Medicaid interprets its rules; therefore, they are appropriate expert testimony and should not be excluded. The Seventh Circuit's holding in *United States v. Davis*, 471 F.3d 783 (7th Cir. 2006), is on point and instructive. Davis was a psychologist and enrolled provider in Indiana's Medicaid program. *Id.* at 785. He was convicted of healthcare fraud after a trial where the "government's case centered on three independent methods that Davis used to get Indiana Medicaid to pay for procedures that they might not otherwise have paid: he billed for services that were actually provided by other people (substitute-billing), he billed for hours of work that nobody performed (overbilling), and he billed for different procedures in order to avoid pre-authorization requirements (miscoding). *Id.* On appeal, he claimed that the court abused its discretion by allowing a Medicaid employee who was an "expert in reimbursement of mental health services" to testify as an expert about how Medicaid enforced, interpreted, and distributed its rules and regulations. *Id.* The Seventh Circuit affirmed, holding that "experts are allowed to testify about how they enforce regulations, whether transactions comply with regulations, and how they ensure that the public knows about regulations as long as the testimony does not incorrectly state the law or opine on certain ultimate legal issues in the case." *Id.* at 789. The proffered expert Medicaid testimony here is analogous to the expert testimony in *Davis* and should be allowed.

The defendants also claim that the Medicaid Program Experts should only be allowed to talk about Medicaid generally, but not about how Medicaid's rules apply to any facts in the case. *Mot. to Exclude Expert Test.* at 13 ("conclusions as to applying the law (at a given time) to a billed service is the proper province of the jury"). "[A]n expert may refer to the law in expressing his or her opinion." *United States v. Bedford*, 536 F.3d 1148, 1158 (10th Cir. 2008) (IRS agent allowed to testify as expert to tax consequences of transaction "so long as the expert does not directly

embrace the ultimate question of whether the defendants did in fact intend to evade income taxes")
(cleaned up)). "However, an expert may not simply tell the jury what result it should reach without
providing any explanation of the criteria on which that opinion is based or any means by which
the jury can exercise independent judgment." *United States v. Dazey*, 403 F.3d 1147, 1171 (10th
Cir. 2005) (expert testimony on fraudulent nature of "prime bank" investment programs allowed
because expert "did not simply tell the jury to reach a particular verdict based on his own say-so"
but "he carefully explained the source of his extensive knowledge" and "he did not testify that any
particular defendant actually violated the law"). Thus, expert "[w]itnesses are permitted to testify
about how the law applies to a certain set of facts, so long as they provide adequate explanations
for their conclusions." *Richter*, 796 F.3d at 1196 (testimony was not admissible expert opinion
because witness did not provide any explanation); *United States v. Bishop*, 926 F.3d 621, 632-33
(10th Cir. 2019) (citing *Richter* and affirming expert testimony that firearm met legal definition of
a machinegun because expert explained the basis for his opinion).

      Here, the Medicaid Program Experts will give their opinions based on trial evidence
showing the defendants billed Medicaid for time beneficiaries were sleeping, playing video games,
lifting weights, etc., and on Medicaid's rules as interpreted in the CMS 1500 manual and the
*Wyoming Medicaid Program Community Mental Health & Substance Abuse Services Manual*. The
defendants know the relevant rules because they cite to the same manuals in their motion. *Mot. to
Exclude Expert Test.* at 9-11. The defendants disagree with the experts' interpretation of those
rules, but that does not make the expert testimony inadmissible, just disputed. In addition, the
proposed expert testimony does not touch on the defendants' state of mind, which is an essential
element of the crimes charged, so the government's experts will not be telling the jury how to
decide the case. The defendants rightly point out that the court instructs on the law so there are

significant limits on expert testimony related to the law, and that Ms. Brockman is not a lawyer. *Mot. to Exclude Expert Test.* at 13-14. This actually cuts against their argument because it is expert testimony from an attorney that poses a particular risk. *See, e.g., Specht v. Jensen*, 853 F.2d 805, 809 (10th Cir. 1988). But even then, when properly limited at trial, testimony regarding legal requirements is still proper. *See United States v. Arutunoff*, 1 F.3d 1112, 1118 (10th Cir. 1993) (a law teacher's testimony which "discussed several aspects of securities law, but he did not attempt to apply the law to the facts of the case or otherwise tell the jury how the case should be decided" was not error). All things considered, the Medicaid Program Experts should be allowed to apply Medicaid's rules to the facts of the case.

The defendants also claim that the Medicaid Program Experts are "unqualified to offer [expert testimony] because of their lack of education and credentialing." *Mot. to Exclude Expert Test.* at 7 and 9 ("None of these degrees qualify any of the prospective witnesses to properly opine as to the medical necessity of the treatment provided to the inpatient children treated as part of NWTC.") The defendants admit, however, that the Medicaid Program Experts are qualified (presumably through their training and experience with the program) to testify about how the Wyoming Medicaid functions, which is what they have been designated to do. *Id.* at 3. Based on their specialized knowledge of Wyoming Medicaid, they should be allowed to testify as to the program's rules governing medical necessity and how those rules are interpreted and enforced. In *United States v. Bertram*, 900 F.3d 743, 751 (6th Cir. 2018), the Sixth Circuit held that a state Medicaid director of operations was allowed to testify as expert because testimony was reliable and relevant. The *Bertram* court explained that the director's testimony "was reliable because she was familiar with the Medicaid regulations and she testified accurately about the meaning of the regulation defining medical necessity. And it was relevant because medical necessity cut to the

heart of the case." *Id.* Also, a witness may be qualified as an expert by knowledge, skill, experience, training, <u>or</u> education, so no particular credential or degree is required. *See* FED. R. EVID. 702. Therefore, the Medicaid Program Experts are qualified to give expert testimony as designated.

Finally, the defendants complain that the government should not be allowed to present expert testimony from all three Medicaid Program Experts because they will offer the same opinions. *Mot. to Exclude Expert Test.* at 5-7. Although the opinions are the same on paper, they come from different places and cover different times. Mr. Brockman's opinions will relate to the times prior to March 2015 when she stopped being Wyoming Medicaid's program manager overseeing behavioral health benefits. Ms. Stout's opinions will cover the time after March 2015 when she became quality control manager overseeing Wyoming Medicaid's substance abuse and mental health programs. The charged conspiracy and fraud ran from April 2009 through August 2016 with claims for noncovered services submitted through at least December 2015; that is, across the tenures of both Ms. Brockman's and Ms. Stout's management of Medicaid's behavioral health benefits, including the substance abuse and mental health programs. Therefore, Ms. Brockman's and Ms. Stout's expert testimony is not cumulative, and the government should be able to present both witnesses as experts.

Ms. Brockman and Ms. Stout work for Wyoming Medicaid and are qualified to testify as experts due to their specialized knowledge of the rules as program managers. Their expert opinions come from applying those rules to hypotheticals and trial exhibits presented to them. Ms. Livingston, on the other hand, is an investigative auditor who worked on the investigation and prosecution. She is employed by MFCU, which is an agency of the Wyoming Attorney General's Office not the Department of Health. She is qualified as an expert by her education as a medical

biller, her experience billing Wyoming Medicaid, and her training and experience at MFCU auditing Medicaid providers. Her opinions will be based on applying this specialized knowledge to her personal review of hundreds of progress notes and supervision sheets documenting billed-for activities and associated claims data. Therefore, her testimony will be neither cumulate nor duplicative—and if it is, the court can decide that based on a trial objection to specific testimony as it compares to testimony already received.

As to Ms. Livingston, the defendants further complain that she will testify that Wyoming Medicaid paid NWTC approximately $8.5 million as a result of claims submitted by NWTC under four procedure codes. The defendants go on to assert that this testimony may be inappropriate because it will raise an improper inference that 100% of these claims were fraudulent. *Mot. to Exclude Expert Test.* at 8. The defendants' fears do not justify limiting Ms. Livingston's testimony about Medicaid's payments to NWTC prior to trial, especially when this appears to be the kind of testimony the defendants would deem to be acceptable fact testimony. The defendants can object at trial if they believe Ms. Livingston's payments testimony is improper, and the court can handle that objection with sure knowledge of the question asked and the answer given rather than based on the defendants' speculation.

**2. Testimony of Brad Bell should not be excluded.**

The defendants complain that the designation of forensic accountant Brad Bell is deficient because we do not tell them what his opinions will be. *Mot. to Exclude Expert Test.* at 16-17. They then say: "If the Government intends to offer Mr. Bell to testify to nothing but the fact that NWTC received money from the State of Wyoming, deposited such money in its operating account, then NWTC paid the Defendants and other employees of the treatment center a salary as part of their

employment with NWTC, this is something that can be addressed without an expert witness and by way of stipulation." *Id.* at 17.

Rule 702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion <u>or otherwise</u>…." FED. R. EVID. 702(a) (emphasis added). The government reads this to mean that some fact testimony falls under Rule 702 and therefore the government may be required to designate witnesses with specialized knowledge as experts even if their testimony will not include any opinion. As the defendants gleaned from the government's designation, we intend to call Mr. Bell to testify about the flow of money from Wyoming Medicaid through NWTC to the defendants and their bank accounts. This fact testimony may be informed by Mr. Bell's specialized knowledge as a forensic accountant, so we designated him as a potential Rule 702 witness. The defendants' claim that the notice was deficient is belied by their understanding of his expected testimony.

At trial, if the government can present the cash-flow evidence through a non-expert witness, we may do so. If the defendants are willing to stipulate to the relevant facts, we agree to do so. But for now, Mr. Bell is properly designated as a Rule 702 witness.

**3. The defendants' arguments about the meaning of Wyoming Medicaid rules governing "recreational activities" and problems they see with the government's case do not justify exclusion of expert testimony.**

Much of the defendants' motion reads like a closing argument or a cross-examination outline or a *Brady* motion. The government disputes their various claims, but we don't detail them here because none justify excluding or limiting the government's proposed expert testimony, which will help the jury understand the issues and decide the defendants' guilt or innocence.

*Conclusion*

Ultimately, the defendants want to exclude expert testimony because that testimony is directly relevant to proving the charged fraud. But "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704. Nor is an opinion unduly prejudicial because it is strong evidence of defendants' guilt. To the contrary, such evidence is exactly the kind that should be admitted at trial where the jury must understand a regulatory program like Medicaid to reach a verdict. The defendants' motion to exclude expert testimony prior to trial should be denied.

Respectfully submitted this 28th day of January, 2022.

L. ROBERT MURRAY
United States Attorney


By: ____/s/ Eric J. Heimann_____
ERIC J. HEIMANN
Assistant United States Attorney


By: ____/s/ Travis J. Kirchhefer_____
TRAVIS J. KIRCHHEFER
Special Assistant United States Attorney




**CERTIFICATE OF SERVICE**

This is to certify that on this 28th day of January, 2022, I served true and correct copies of the foregoing motion upon all parties via CM/ECF.

_____/s/ Corine M. Aranda_____
U.S. Attorney's Office

11