ERIC J. HEIMANN
Wyoming State Bar No. 6-4504
Assistant United States Attorney
District of Wyoming
P.O. Box 668, Cheyenne, WY 82001
(307) 772-2124
eric.heimann@usdoj.gov

TRAVIS J. KIRCHHEFER
Wyoming State Bar No. 6-4279
Special Assistant United States Attorney
Medicaid Fraud Control Unit
Wyoming Attorney General's Office
2424 Pioneer Avenue, Cheyenne, WY 82002
(307) 777-6858
travis.kirchhefer@wyo.gov

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>v.<br><br>**MATTHEW TY BARRUS,**<br>**GREGORY J. BENNETT, and**<br>**DEVIN E. DUTSON,**<br><br>Defendants. | Case No. 19-CR-171-J |

**GOVERNMENT'S MOTION IN LIMINE FOR PRETRIAL DETERMINATION OF EVIDENTIARY FOUNDATION FOR CERTAIN NWTC BUSINESS RECORDS AND SUMMARIES OF THOSE RECORDS**

The United States of America, by and through Assistant United States Attorney Eric Heimann and Special Assistant United States Attorney Travis Kirchhefer, hereby requests a pretrial finding by the court that **(1)** certain records qualify as business records for purposes of Federal Rule of Evidence 803(6), **(2)** pdf copies of those records are admissible duplicates under

Rule 1003, and **(3)** the records are relevant under Rule 401. The subject records are progress notes, client supervision sheets, and behavioral support and supervisions sheets created by the defendants and other employees of Northwest Wyoming Treatment Center (NWTC) as part of their employment and maintained by NWTC as part of its substance abuse treatment business. The government acquired these patient records during its investigation and then made digital copies, which were provided to the defendants in 2019.

The government also requests a pretrial determination that summaries of Medicaid claims data and the NWTC progress notes and supervision sheets are admissible under Rule 1006.

The government and defense counsel have discussed Rule 803(6) and Rule 1003 stipulations to various NWTC patient records, but we have not reached an agreement. By filing this motion, the government does not foreclose those discussions or a future agreement. The government also believes that other NWTC records may qualify as business records under Rule 803(6), but we are only asking for pretrial determination of evidentiary foundations for the voluminous progress notes and supervision sheets.

### RECORDS SUBJECT TO REQUESTED PRETRIAL FINDINGS

Between April 2009 and August 2016, NWTC operated a residential substance abuse treatment program for adolescents in Powell, Wyoming. During this time, defendant Matthew Ty Barrus was NWTC's executive director, defendant Greg Bennett was NWTC's clinical director, and defendant Devin Dutson was employed by NWTC as a therapist. NWTC employed a number of other individuals, most of whom were not licensed therapists, or they held a lower-level certification that allowed them to provide some but not all Medicaid-covered substance abuse treatment services.

In September 2019, the grand jury returned an indictment charging the defendants with healthcare fraud conspiracy, healthcare fraud, and spending fraud proceeds. *Indictment*, Doc. 1. As alleged in the indictment, the defendants caused NWTC to submit to Wyoming Medicaid approximately $8.5 million in claims for alleged substance abuse and mental health treatment provided through the residential substance abuse treatment program. The claims were fraudulent for a number of reasons, including that almost all of the billed-for activities were not covered by Medicaid, and most were not provided by licensed treatment providers.

The government's investigation gathered records from NWTC, including substance abuse and mental health treatment records for NWTC's patients. As relevant here, on March 11, 2019, FBI Special Agent Arlen Scholl went to NWTC's Powell facility and seized over three-dozen boxes of paper records. Some of these records were already boxed up; others SA Scholl found in filing cabinets and on desks. The seized records contained approximately 110,000 documents. This seizure was done with the consent of NWTC's board of directors and under authority of a federal subpoena.

The USAO and FBI in Wyoming sent 38 boxes of seized NWTC records to be scanned at the DOJ's Litigation Technology Services Center (LTSC) in South Carolina. LTSC scanned all documents into Adobe-pdf files with each page bates-numbered. LTSC then returned the paper documents and pdf files to the USAO and FBI. This is a standard service LTSC provides to DOJ prosecution teams. The paper documents are currently located in the FBI's evidence facility in Denver. The government provided defense counsel the bates-numbered pdf copies in discovery. These documents bear bates numbers between 17R1392-HSS-Box001-000001 and 17R1392-HSS-Box038-002375.

As to Rule 1003, the government is seeking a pretrial finding that the bates-numbered pdf files are admissible duplicates under Rule 1003 of the Federal Rules of Evidence.

Based on interviews with former NWTC employees, we know that employees who worked with NWTC's clients (including the defendants) completed progress notes, client supervision sheets, and behavioral support and supervision sheets (collectively, the "progress notes and supervision sheets," or the "notes and sheets") to document what they did with each client each day. These notes and sheets were used in NWTC's treatment business to bill Medicaid and maintained in NWTC's patient files to document the treatment and services NWTC provided to their clients, a majority of whom were Medicaid beneficiaries. Sometime after NWTC's substance abuse treatment program closed down in 2016, NWTC employee Cory Carpenter gathered the patient records in boxes and filing cabinets for storage in NWTC's Powell facility. These records were then seized by SA Scholl in March 2019.

NWTC employees completed notes and sheets documenting what each client was doing between 7:00 a.m. and 11:00 p.m. over the six-year life of the alleged fraud. There were several clients in the program at any one time, and most clients spent several months in the program. This means there are a large number of notes and sheets. The government coded approximately 46,000 notes and sheets, almost all of which are one page. Although numerous, the notes and sheets can be readily identified because each one is entitled "Progress Note" or "Behavioral Support and Supervision" sheet or "Client Supervision Sheet," and each contains information about particular activities with a particular client on a particular day at particular times. Finally, with very few exceptions, each note and sheet bears the name and/or signature of at least one NWTC employee.

In preparation for trial, the government created 338 exhibits containing the notes and sheets for 23 of NWTC's substance abuse treatment clients who were also Medicaid beneficiaries. Each exhibit contains a client's progress notes or supervision sheets for a particular year and month. Each page is bates-numbered so it can be identified and linked to evidence provided to the defendants in discovery. We have provided copies of these exhibits to the defendants and will provide copies to the court upon request. These exhibits cover approximately one quarter of NWTC's Medicaid clients, and we estimate there are 12,335 total pages across the 338 exhibits.

The government seeks pretrial determination that all of the progress notes, client supervision sheets, and behavioral support supervision sheets found within the documents bearing bates numbers 17R1392-HSS-Box001-000001 and 17R1392-HSS-Box038-002375 are business records as defined by FRE 803(6) and are relevant to the alleged fraud under FRE 401. Failing that, we ask for pretrial determination that our notes-and-sheets exhibits qualify as FRE 803(6) business records and are relevant under FRE 401.

The government has also prepared summaries of each month for each client comparing Medicaid claims by procedure code (as found in Medicaid's claims data) with time reported on notes and sheets for each procedure code (as tallied on the notes and sheets for that month). These summaries will be introduced at trial through the testimony of MFCU Investigative Auditor Cody Livingston. The government requests a pretrial determination that these summaries are admissible under FRE 1006.

Depending on the defendants' responses, the requested findings may require an evidentiary hearing. If so, the government asks that the hearing be held before trial and outside the presence of the jury.

*ARGUMENT*

This court must decide preliminary questions about whether evidence is admissible. Fed. R. Evid. 104(a). "In so deciding, the court is not bound by evidence rules, except those on privilege." *Id.* The court may hold a pretrial hearing to decide preliminary questions about admissibility. *See, e.g., United States v. James*, 590 F.2d 575 (5th Cir. 1990) (establishing precedent for pretrial *James* hearing to decide admissibility of co-conspirator statements under the hearsay rule). The court may rely upon hearsay to establish the admissibility of evidence. *United States v. Owens*, 70 F.3d 1118, 1124 (10th Cir. 1995) (affirming district court's admission of co-conspirators' out-of-court statements based in part on those statements) ("the district court has the discretion to consider any evidence not subject to a privilege, including both the coconspirator statements the government seeks to introduce at trial and any other hearsay evidence, whether or not that evidence would be admissible at trial"). If the defendants oppose this motion, the government requests an opportunity to establish evidentiary foundations through hearsay evidence at a pretrial hearing.

**1. The scanned copies of NWTC's paper records are admissible duplicates under Federal Rule of Evidence 1003.**

An original writing or record is required in order to prove its content unless the rules of evidence or a federal statute provides otherwise. Fed. R. Evid. 1002. "A duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." *Id.* at 1003. "A 'duplicate' means a counterpart produced by a mechanical, photographic, chemical, electronic, or other equivalent process or technique that accurately reproduces the original." *Id.* at 1001(e).

Here, the original records are contained in the boxes taken from NWTC by SA Scholl, including among other records the progress notes and supervision sheets. Those records were then scanned into pdf files and bates-stamped by the LTSC. The government has provided defendants a written summary of LTSC's work on these records, and all parties have relied on the bates-stamped pdf files thus far.

The pdf files were created through an electronic scanning process, so they qualify as duplicates under Rule 1001(e). The government believes there is no genuine question that the seized paper records are NWTC's authentic records, nor is it unfair to admit the duplicates. If anything, the duplicates will increase the fairness of trial by making it easier for the court, the jury, and the parties to know what they are looking at because of the bates numbers. Therefore, the scanned records bearing a bates number between 17R1392-HSS-Box001-000001 and 17R1392-HSS-Box038-002375, including all of the progress notes and supervision sheets, are admissible duplicates as defined by Rule 1003 such that no one should be required to fish out the original paper record to use as an exhibit at trial.

The defendants also took 30 boxes of records from NWTC's facility in January 2020, and provided the government bates-stamped pdf copies of those records. If requested by the defendants, the government would agree that those records are admissible duplicates as defined by Rule 1003.

**2. The NWTC progress notes and supervision sheets are records of regularly conducted activity as defined by Federal Rule of Evidence 803(6), and therefore admissible for the truth of the matters asserted.**

Generally, an out-of-court statement (including a fact written in a paper record) is hearsay and not admissible for the truth of the matter asserted in the statement unless a federal statute, a

7

rule of evidence or another applicable rule makes the statement admissible. Fed. R. Evid. 802 (hearsay prohibition); *id.* at 801(c) (definition of hearsay).

Rule 803(6) provides an exception for records of regularly conducted activities: "A record of an act, event, condition, opinion, or diagnosis if: **(A)** the record was made at or near the time by--or from information transmitted by--someone with knowledge; **(B)** the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; **(C)** making the record was a regular practice of that activity; **(D)** all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and **(E)** the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." *Id..* at 803(6). This is typically referred to as the business-records exception to the hearsay rule. It allows qualifying records to be admitted for the truth of the matters set forth in the records.

Based on interviews with NWTC's former employees and a review of the records, we know that NWTC's former employees (including the defendants) wrote progress notes and two kinds of supervision sheets to document the time they spent with NWTC's substance abuse treatment clients:

    a. The client supervision sheets were used from the beginning of the alleged fraud in April 2009 through at least December 2010. Each client supervision sheet includes the client's name, the date, and space for comments on the client's behavior during each 8-hour work shift (overnight, 7-3, and 3-11). The reporting employee signs their comments, which include general observations of the client's activities and attitudes. Client supervision sheets do not include a procedure code and (to the government's knowledge) were not used to bill Wyoming Medicaid.

    b. The behavioral support and supervision sheets replaced the client supervision sheets beginning no later than July 2011, and were then used through the closing of

      the program in 2016. Each behavioral support and supervision sheet includes the client's name, the date, the work shift (either 7-3 or 3-11), and general observations of the client's activities and attitudes during the shift. Some report the client's activities in 2-hour increments; others report activities every 15-30 minutes. These sheets are signed by an NWTC employee. Unlike the client supervision sheets, the behavioral support and supervision sheets include procedure codes used to bill Wyoming Medicaid.

  c.  The completed progress notes include the client's name, the date and time of the activity, a general description of the activity, and the employee's name and/or signature. The progress notes also include procedure codes used to bill Wyoming Medicaid.

Generally, NWTC's employees completed their notes and sheets the same day or within a few days of the recorded activity. The coded progress notes and behavioral support and supervision sheets were used by NWTC to bill Medicaid. All of the notes and sheets were kept in NWTC's patient files to record each client's treatment. And when the program shut down, NWTC employee Cory Carpenter gathered NWTC's patient files (including the notes and sheets) for storage.

In addition, Wyoming Medicaid rules in effect at the time required Medicaid providers like NWTC and the defendants to document all services on progress notes in the client's medical records. *Rules,* Wyo. Dep't of Health, Medicaid, Ch. 13, § 4(w)(xii) (Nov. 19, 2002) (superseded April 7, 2015).

Based on these facts, the progress notes, client supervision sheets, and behavioral support and supervision sheets qualify as Rule 803(6) records and should be admitted for the truth of the matters recorded on them, including the client's name; the activity/service; the date and time of the activity/service; the procedure code assigned to the activity/service; and the identity of the NWTC employee who witnessed, supervised, or provided the activity/service. First, the notes and sheets were written by NWTC employees (including the defendants) at or near the time they provided services to, or supervised activities involving, particular NWTC clients. Second, NWTC

9

used and maintained the notes and sheets as part of their treatment business. Third, writing and filing the notes and sheets was a regular part of NWTC's business. Finally, NWTC employees maintained custody and control of the records throughout the operation of NWTC's residential substance abuse treatment program and then after the program shut down.

Therefore, pending an offer of proof by the defendants that the progress notes, client supervision sheets, and behavioral support and supervision sheets were made by a procedure or method that lacks trustworthiness, the notes and sheets qualify as Rule 803(6) business records admissible for the truth of the matters asserted on them.

### 3. The progress notes and supervision sheets are relevant under Federal Rule of Evidence 401.

Relevant evidence is admissible at trial unless the Constitution, a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court provide otherwise. Fed. R. Evid. 402. "Evidence is relevant if: **(a)** it has any tendency to make a fact more or less probable than it would be without the evidence; and **(b)** the fact is of consequence in determining the action." Fed. R. Evid. 401.

Here, the government has alleged that the defendants defrauded Medicaid by (among other things) billing the program all day, every day for non-covered services provided by unlicensed individuals. The progress notes and supervision sheets show the billed-for activities (which the government alleges were noncovered) and the NWTC employee who oversaw those activities (most of whom the government alleges were unlicensed). Therefore, the progress notes and supervision sheets are relevant because they have a tendency to make facts of consequence more or less probable.

### 4. Summaries of Medicaid claims and information recorded on the progress notes and supervision sheets are admissible under Federal Rule of Evidence 1006.

Under Rule 1006, a "proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court." Fed. R. Evid. 1006.

At trial, the government will offer summaries of thousands of claims submitted to Medicaid by or on behalf of NWTC, and summaries of information recorded on the thousands of notes and sheets created by NWTC's employees. Specifically, MFCU Investigative Auditor Cody Livingston will summarize Medicaid claims submitted for 23 NWTC clients by month and procedure code. (These will be the same 23 clients for which we have created exhibits as described above.) She will also summarize the time documented in the notes and sheets for each procedure code for the same client and month. The underlying claims data and patient records were provided to the defendants in the government's initial disclosures in late October and early November of 2019. The underlying data and records are voluminous and cannot be conveniently examined in court; therefore, these summaries should be admissible under Rule 1006. The government will be providing the defendants exhibits containing these summaries this week, and will provide copies to the court ahead of the JERS deadline if requested.

## CONCLUSION

For the reasons stated above, the government requests pretrial findings by the court that NWTC progress notes and supervision sheets qualify as business records for purposes of Federal Rule of Evidence 803(6), pdf copies of all records taken from NWTC (including the notes and

sheets) are admissible duplicates under Rule 1003, the notes and sheets are relevant under Rule 401, and summaries of Medicaid claims data and the progress notes and supervision sheets are admissible under Rule 1006. If the defendants object to the requested findings, the government requests a pretrial hearing to offer supporting evidence. If the defendants do not object, the government believes a hearing is unnecessary, and will prepare a proposed order based on the defendants' failure to object.

Respectfully submitted this 7th day of February, 2022.

L. ROBERT MURRAY
United States Attorney

By: */s/ Eric Heimann*
ERIC J. HEIMANN
Assistant United States Attorney

By: */s/ Travis Kirchhefer*
TRAVIS J. KIRCHHEFER
Special Assistant United States Attorney

## CERTIFICATE OF SERVICE

This is to certify that on this 7th day of February, 2022, I served true and correct copies of the foregoing response upon all counsel via CM/ECF.

*/s/ Corine M. Aranda*
UNITED STATES ATTORNEY'S OFFICE