**FILED**



**9:21 am, 2/10/22**

**Margaret Botkins**
**Clerk of Court**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF WYOMING

---

UNITED STATES OF AMERICA,

Plaintiff,

VS.

MATTHEW TY BARRUS,
GREGORY J. BENNETT, and
DEVIN E. DUTSON,

Defendants.

Case No.  19-CR-00171-ABJ

---

## ORDER GRANTING IN PART AND DENYING IN PART THE GOVERNMENT'S MOTION IN LIMINE TO PRECLUDE DEFENSE EXPERT TESTIMONY, ECF. 172

---

THIS MATTER comes before the court on the Government's *Motion to Preclude Defense Expert Testimony*, ECF No. 172. Having considered the filings, applicable law, and being otherwise fully advised, the court finds the Government's *Motion to Preclude Defense Expert Testimony*—ECF No. 172—should be **GRANTED** in part and **DENIED** in part.

Federal Rules of Evidence 702 and 703 govern the admission of expert testimony. *Werth v. Makita Elec. Works, Ltd.*, 950 F.2d 643, 647 (10th Cir. 1991). Under Rule 702,

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Under Rule 703,

An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703.

Still, if expert testimony is admissible under Rule 702, it still must be relevant and pass muster under Federal Rule of Evidence 403. *See, e.g.*, *United States v. Benally*, 541 F.3d 990, 995 (10th Cir. 2008).

The Government seeks limit of exclude testimony from the following designated experts: (1) Patrick Dixon ("Mr. Dixon"); (2) David Blondeau ("Mr. Blondeau"); (3) Cheryl Wack ("Ms. Wack"); and (4) Jeffrey Randle ("Dr. Randle").[1] ECF No. 172. This court addresses the Government's arguments one expert at a time.

### 1.    Patrick Dixon

---

[1] The Government notes that it does not seek, at this time, to limit of exclude Dr. Fredrick Reamer's testimony. ECF No. 172.

The indictment accuses Defendants Barrus and Bennett of causing NWTC to use fraud proceeds to pay salaries and bonuses to themselves and Defendant Dutson, and to fund individual retirement accounts for each Defendant. ECF No. 1 at 5. Mr. Dixon opines that "it is the board's responsibility to set salaries, bonuses, and retirement packages." ECF No. 148-3 at 5. He also opines that the NWTC Board discharged this responsibility annually. ECF No. 148-3 at 5.

The Government argues Mr. Dixon cannot offer these opinions because they are not based on his own personal experience. ECF No. 172 at 6. Instead his opinions are based on the Wyoming Nonprofit Act, Wyoming Secretary of State filings, NWTC's articles of incorporation and dissolution, board minutes, the indictment here and in Mr. Condie's case, and multiple unattributed interview notes. ECF No. 172 at 5. And the Government argues that can't stand because that is hearsay.

Mr. Dixon is an attorney with decades of experience serving on Boards throughout Wyoming. ECF No. 148-4 at 2. He has practiced mental health law and represented multiple nonprofit boards. ECF No. 148-4 at 2. He also founded the Wyoming State Mental Health Boards Association and has given presentations on the role and responsibilities of nonprofit board members of the State Mental Health Boards Association. ECF No. 148-4 at 2. The court finds this specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue here. And neither party apparently disputes that the testimony is based on sufficient facts or data. But even if they did, this court finds that the materials reviewed provided a sufficient basis on which Mr. Dixon can offer an opinion. The court also finds the testimony stems from

3

reliable principles and methods because Mr. Dixon reviewed the Wyoming Nonprofit
Act, Wyoming Secretary of State filings, NWTC's articles of incorporation and
dissolution, board minutes, the indictment here and in Mr. Condie's case, and interview
notes from NWTC board members. ECF No. 148-3 at 1 & 4. He then applies his personal
experience and knowledge of this area to the facts of this case.

As much as the Government objects to this being a "backdoor" way to get hearsay
in, this court disagrees. The Tenth Circuit has held that "[i]f an expert simply parrots
another individual's out-of-court statement, rather than conveying an independent
judgment that only incidentally discloses the statement to assist the jury in evaluating the
expert's opinion, then the expert is, in effect, disclosing that out-of-court statement for its
substantive truth." *United States v. Pablo*, 696 F.3d 1280, 1288 (10th Cir. 2012). *There*
the expert "becomes little more than a backdoor conduit for an otherwise inadmissible
statement." *Id.* This court finds that Mr. Dixon has not become a backdoor conduit by
opining that "it is the boards responsibility to set salaries, bonuses, and retirement
packages." ECF No. 148-3 at 5. That opinion appears to be based on materials reviewed.
Fair enough some of those materials contain hearsay. But he is not merely parroting
hearsay statements. At trial, should the Government feel Mr. Dixon's testimony is mere
parroting, then the Government is invited to renew its objection at that time. But this
court will not sweepingly limit his testimony where it appears Mr. Dixon's testimony
complies with Federal Rules of Evidence 702 and 703.

The Government also argues Mr. Dixon does not have familiarity with operations
of residential substance abuse treatment centers or mental health practitioner salaries in

4

Wyoming generally. ECF No. 172 at 7. This position is belied by Mr. Dixon's CV. Mr.

Dixon has practiced mental health law and represented multiple nonprofit boards. ECF

No. 148-4 at 2. He also founded the Wyoming State Mental Health Boards Association.

ECF No. 148-4. This court will permit Defendants to flesh out exactly what this

experience entailed at trial. Should the Government feel it is not sufficient, it may renew

its objection at that time. But as a threshold matter this court will not bar this testimony

for want of experience when Mr. Dixon has decades of experience in this field.

The Government also says Mr. Dixon's testimony will not aid the jury because the

indictment's accusation—Defendants Barrus and Bennett of causing NWTC to use fraud

proceeds to pay salaries and bonuses to themselves and Defendant Dutson, and to fund

individual retirement accounts for each Defendant—is as true no matter *how much* money

Defendants received. Fair enough. But as this court understands the proffered testimony,

Mr. Dixon will not be testifying that it is not a legal violation if the amount recovered is

small. Rather, Mr. Dixon intends to opine that Defendants did not cause NWTC to do

*anything*. Defendants are free to offer evidence the NWTC made these decisions

independent of Defendants. For that reason, the Government's argument to this point is

unpersuasive.

Finally, the Government argues Mr. Dixon's testimony should be limited under

Rule 403 because it "could create the perception that it is acceptable to defraud a

healthcare program as long as the responsible party takes only a reasonable amount of the

fraud proceeds himself." ECF No. 172. The court does not think Mr. Dixon's testimony is

being offered to create such a perception. In fact, nothing in Mr. Dixon's report opines on when it is "reasonable" to break the law. ECF No. 148-3.

Still, this court notes that although it is not limiting Mr. Dixon's testimony for now, if, during the trial, his testimony veers into an impermissible law, the Government may renew its objections at that time.

The court reminds the parties that Mr. Dixon cannot "state legal conclusions by applying law to the facts." *United States v. Jensen*, 608 F.2d 1349, 1356 (10th Cir. 1979). In that vein, the court cautions that Defendants must avoid testimony which instructs the jury on how to apply the law to the facts of this case.

### 2.   David Blondeau

The Government argues Mr. Blondeau's testimony should be excluded because it is irrelevant and based on hearsay.

The court agrees with the Government regarding relevance. It is unclear *exactly* what Defendants intend to have Mr. Blondeau testify to. Instead, Defendants say generally that he is expected to testify to the findings of his CARF report. ECF No. 151. Based on the CARF report, this court believes Mr. Blondeau intends to report on CARF certifications, standards, materials reviewed, individuals interviewed and other considerations. ECF No. 148-5. He is also expected to testify as staff members' qualifications.

But none of that is relevant here and so Mr. Blondeau cannot testify. The CARF survey was to acquire national accreditation. And, as Defendants point out, a national certification was required by the State of Wyoming Department of Health to provide the

services that NWTC provided. ECF No. 184 at 9. But nothing in the indictment suggests that NWTC had an issue with certification. In fact, the indictment says, "[a]t all times material to this indictment, Northwest Wyoming Treatment Center Inc. ("NWTC") was an enrolled provider in Wyoming Medicaid and a Wyoming-certified substance abuse provider." ECF No. 1 at 2–3. The issue here is whether Wyoming Medicaid was reimbursing services which were therapeutically essential. ECF No. 1. And Defendants have not shown how CARF certification is related to Wyoming Medicaid's reimbursements of therapeutically essential services. True "Wyoming Medicaid will reimburse substance abuse treatment services only if the services are therapeutically essential *and* the provider is a certified substance abuse treatment provider, or employed by or under contract with a certified substance abuse treatment provider." ECF No. 1. So certification is a component of reimbursement. But that is not the component at issue in this case. ECF No. 1. *See also* ECF No. 172 at 11.

Defendants also detail what Mr. Blondeau reviewed in conducting this national certification survey and summarize his findings. But none of these findings speak to whether specific types of treatment are therapeutically necessary. Fair enough, Mr. Blondeau's CARF summary may praise NWTC's program generally for its cleanliness, staff members, and community partnerships. *See* EC F No. 184. But all this general praise is not apparently relevant to Medicaid billing practices. And nothing in Mr. Blondeau's CARF survey speaks directly on NWTC's billing practices and Medicaid reimbursement. For that reason, Mr. Blondeau's testimony is excluded as irrelevant.

### 3.    Cheryl Wack

Defendants designate Ms. Wack to testify on "the methods and procedures employed by Medicaid for properly billing services by care providers, generally, and how those procedures relate to North West Wyoming Treatment Center, specifically." ECF No. 151. She is also expected to testify on "the processes and procedures used by Medicaid in evaluating, assessing, correcting and approving submitted billing and billing codes." ECF No. 151.

The Government argues this court should exclude Ms. Wack's testimony because she is not qualified to talk about *Wyoming* Medicaid. ECF No. 172 at 11. Specifically, the Government takes two issues with Ms. Wack's qualifications. First, the Government argues that she did not acquire Medicaid experience during the duration of relevant period. ECF No. 172. Instead, Ms. Wack only gained her Medicaid experience towards the end of the charged conspiracy and health care fraud. Second, the Government believes that her experience with Medicaid in general does not give her sufficient experience in *Wyoming* Medicaid claims processing or procedures. ECF No. 172.

First, Ms. Wack has worked as a medical billing coding specialist since 2014. ECF No. 151-1. In this capacity, she monitors claims submission and the accuracy of ICD-10, HCPCS, and CPT codes. ECF No. 151-1. Although she did not gain this experience throughout the duration of the charges, she has since gained 8 years' worth of experience in Medicaid methods and procedures. So the court will not exclude her testimony on that basis.

Second, this court finds Ms. Wack has the requisite relevant experience. Although she has not apparently worked in the Wyoming Medicaid program, her experience with

this federal program and federal rules are sufficient for her to offer opinions on those

federal codes, procedures, and rules here. This court recognizes that states have latitude

in formulating specific Medicaid plans. *Colorado Health Care Ass'n v. Colorado Dep't of

Soc. Servs.*, 598 F. Supp. 1400, 1407 (D. Colo. 1984), *aff'd,* 842 F.2d 1158 (10th Cir.

1988). That said, Ms. Wack is still qualitied to talk about federal Medicaid codes. *See*

ECF No. 1 at 5. If the Government believes she is veering out of that lane and opining on

things on which she has no experience, the Government may renew its objection at trial.

But right now, the court sees no reason to exclude Ms. Wack's testimony for lack of

qualifications on Medicaid billing.

### 4.      Jeffrey Randle

Defendants designated Dr. Randle to testify on "the medical standard of care

regarding the methods, techniques and procedures related to addressing addiction and

addiction recovery for care providers generally and [NWTC] specifically; and will

address Medicaid as it relates to the same." ECF No. 152 at 1–2. He is also designated to

address "anaerobic and aerobic activities as they relate to addressing addiction and

addiction recovery, and the reasonableness of the scope of the activities to patient care

and benefit; and whether such activities fit within the medical standard of care." ECF No.

152 at 1–2.

The Government argues Dr. Randle's is not competent to testify in this

proceeding. The Government believes Dr. Randle's qualifications are limited to physical

rehabilitation issues related to sports, spinal cord, and traumatic brain injuries, chronic

pain, stroke, electrodiagnosis. ECF No. 172 at 14. The Government highlights that "this

matter involves substance abuse treatment for adolescents in a Wyoming certified substance abuse treatment center." And it contends Dr. Randle cannot speak on that issue.

As is clear from the indictment, a central issue here is whether the services provided were "therapeutically essential." ECF No. 1. It is within Defendants' discretion to argue that anaerobic and aerobic activities were billed because they were therapeutically essential. Dr. Randle, as someone who is certified in physical medicine and rehabilitative medicine, has the credentialing to opine on the health benefits of such medicine. ECF No. 15201. Dr. Randle also has experience in assessing the value of physical medicine on the qualities of life for people who suffer from pain and addiction. ECF No. 152-1 at 3–16. And he has had hours of continuing education on addiction ECF No. 152-1 at 16. For these reasons, this court will not, at this time, exclude Dr. Randle's testimony on the health benefits of anaerobic and aerobic activities right now. If the Government believes Dr. Randle is veering out of that lane and opining on things on which he has no experience, the Government may renew its objection at trial.

That said, this court is not convinced Dr. Randle knows what types of treatments may be billed to Medicaid and which billing practices comply with program rules. So if his testimony begins to opine on those issues, this court limits him from doing so.

For these reasons, it is **ORDERED** the Government's *Motion to Preclude Defense Expert Testimony* —ECF No. 172—is **GRANTED** in part and **DENIED** in part.

It is further **ORDERED** that Mr. Dixon's testimony is not excluded or otherwise limited;

It is further **ORDERED** that Mr. Blondeau's testimony is excluded;

10

It is further **ORDERED** that Ms. Wack's testimony is not excluded; and

It is further **ORDERED** that Dr. Randle's testimony is limited but not excluded.

Dated this  10th day of February, 2022.

Alan B. Johnson
United States District Judge