TRAVIS J. KIRCHHEFER
Wyoming State Bar No. 6-4279
Special Assistant United States Attorney
Medicaid Fraud Control Unit
Wyoming Attorney General's Office
2424 Pioneer Avenue, Cheyenne, WY 82002
(307) 777-6858
travis.kirchhefer@wyo.gov

ERIC J. HEIMANN
Wyoming State Bar No. 6-4504
Assistant United States Attorney
District of Wyoming
P.O. Box 668, Cheyenne, WY 82001
(307) 772-2124
eric.heimann@usdoj.gov

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 19-CR-171-J** |
| **MATTHEW TY BARRUS,** **GREGORY J. BENNETT,** **and DEVIN E. DUTSON,** | |
| **Defendants.** | |

### Government's Response to Motions in Limine, ECF Docket Nos. 196, 198, 199, 201.

Defendants Barrus and Bennett filed multiple motions in limine seeking to limit the government's presentation of evidence on the basis of Federal Rules of Evidence 401, 402, and 403. (Docs. 196, 198, 199, and 201.) Each of these motions attempts to improperly prevent the government from presenting relevant and admissible evidence at trial. Accordingly, the United States of America, through Special Assistant United States Attorney Travis J. Kirchhefer and

Assistant United States Attorney Eric Heimann, asks the Court to deny each of the above-enumerated motions in limine.

## I.   BACKGROUND

The grand jury charged defendants Barrus and Bennett with conspiracy to commit healthcare fraud, healthcare fraud, and money laundry. (*Indictment*, Doc. 1.) All charges stem from the defendants operation of a residential substance abuse treatment facility, Northwest Wyoming Treatment Center, Inc. (NWTC), from April 2009 through August 2016. As charged in the indictment, the defendants caused the submission of Wyoming Medicaid mental health and substance abuse treatment claims for non-covered activities such as room and board care, recreational activities, socialization, education, and vocational services that were often performed by unlicensed or provisionally licensed individuals. These claims also falsely identified the treating provider and falsely claimed that they were individual one-on-one contacts despite having occurred almost exclusively in a group setting. As a result of the defendant's false and fraudulent Medicaid claims for codes H0005, H0047, H2015, and H2021 Wyoming Medicaid paid $8.5 million in state and federal healthcare funds. Additional facts relevant to each motion will be separately discussed below.

## II.   LEGAL STANDARD.

Motions in limine save the court and the parties' time, cost, and effort "by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Mendelsohn v. Sprint/United Mgmt. Co.*, 587 F.Supp.2d 1201, 1208 (D. Kan. 2008), aff'd, 402 F. App'x 337 (10th Cir. 2010) (internal citation omitted). However, "in many cases, evidentiary rulings should

be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in the proper context." *Id*. As the movant, the defendants bear "the burden of demonstrating that the evidence is inadmissible on any relevant ground. The court may deny a motion in limine when it lacks the necessary specificity with respect to the evidence to be excluded. At trial, the court may alter its limine ruling." *Starling v. Union Pac. R. Co.*, 203 F.R.D. 468, 482 (D. Kan. 2001) (internal quotation omitted). "Denial only means that the court cannot decide admissibility outside the context of trial. A ruling in limine does not relieve a party from the responsibility of making objections, raising motions to strike or making formal offers of proof during the course of trial." *Id*. (internal quotation omitted).

"Under Federal Rule of Evidence 401, evidence is relevant if it tends to make a material fact 'more probable or less probable than it would be without the evidence.'" *United States v. Condrin*, 473 F.3d 1283, 1285 (10th Cir. 2007) (quoting Fed.R.Evid. 401). "Whether a fact is material is determined by the substantive law which governs the action." *United States v. Shomo*, 786 F.2d 981, 985 (10th Cir. 1986). Background evidence is relevant to help the jury hear a complete story. *Sec. & Exch. Comm'n v. Goldstone*, 233 F. Supp. 3d 1149, 1167 (D.N.M. 2017); *cf. United States v. Ford*, 613 F.3d 1263, 1267 (10th Cir. 2010) (*res gestae* material admitted under Fed.R.Evid 404(b) when "inextricably intertwined with the charged crime"). Relevant evidence is admissible unless it is specifically excluded by the Constitution, a federal statute, another rule of evidence, or "other rules prescribed by the Supreme Court." Fed.R.Evid. 402.

Federal Rule of Evidence 403 provides that the court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed.R.Evid. 403. "The core of unfair prejudice is evidence that

3

invites decision on an improper basis," such as "evidence that impugns the defendant's character or provokes an emotional response in the jury." *United States v. Brooks*, 736 F.3d 921, 941 (10th Cir. 2013) (internal quotations and citations omitted). "Evidence is not unfairly prejudicial merely because it damages a party's case." *United States v. Rodriguez*, 125 F.Supp.3d 1216, 1255 (D.N.M. 2015) (collecting cases). To determine whether the evidence should be excluded, the court "must weigh the proffered evidence's probative value against its potential for unfair prejudice. It is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under rule 403." *Id*. at 1254 (cleaned up). Exclusion of probative evidence under Rule 403 is an "extraordinary remedy and should be used sparingly." *United States v. Tan*, 254 F.3d 1204, 1211 (10th Cir. 2001).

### III.  ARGUMENT

As a general matter defendants Barrus and Bennett's motions in limine do not support the requested relief. Rather than making specific requests, they ask the court to establish blanket prohibitions that contain clearly relevant materials. Similarly, the defendants' cursory allusion to prejudice is not sufficient to support their burden for in limine relief. Therefore, the government moves the court to deny each of the motions in turn.

### A.  The court should deny defendants' motion in limine regarding civil proceedings and administrative actions.

For these reasons, the government asks the court to deny defendant Barrus and Bennett's motion in limine regarding salaries, bonuses, personal finances, and benefit packages.

In November 2015, the Wyoming Department of Health, Division of Healthcare Financing (Wyoming Medicaid), Program Integrity Unit (PIU) requested documents from Northwest Wyoming Treatment Center (NWTC) as part of the PIU's review of the center's billing practices.

4

Following that request, on December 16, 2015, staff from the PIU met with defendants Barrus and Bennett as part of the administrative investigation. That investigation ultimately resulted in the 2016 civil forfeiture action and administrative overpayment recovery that is the center of these defendants' complaint. The PIU also referred the case to federal investigators and the Wyoming Attorney General's Medicaid Fraud Control Unit (MFCU). During the subsequent criminal investigation, federal agents received permission from the NWTC board of directors to seize NWTC client treatment records including progress notes and various supervision sheets. Both the government and these defendants[1] seek pretrial rulings on the admissibility of certain seized patient records under Fed.R.Evid. 803(6). (Doc. 188, 203.)

Defendants Barrus and Bennett ask the court to preclude "any discussion regarding the civil forfeiture action against [NWTC] or the administrative proceedings initiated by the State of Wyoming for recovery of paid Medicaid claims." (Doc. 196 at 1.) They seek a pretrial ruling on the basis that the "probative value of admitting this evidence is substantially outweighed by its prejudicial effect" and "likely would be irrelevant under W.R.E. [sic] 402." (*Id*. at 1-2.) As to both questions, the defendants' motion should be denied.

The defendants request for the exclusion of any evidence regarding the civil administrative and forfeiture actions is overbroad and seeks to preclude relevant evidence. The government, and these defendants, have already notified the court of their intent to use portions of the seized records as direct evidence of the activities at NWTC. Evidence about the seizure process and preceding investigation will provide necessary context to help the jury weigh evidence presented from these

---

[1] Defendant Dutson has not yet weighed in on these requests.

5

seized materials. Similarly, evidence of the PIU investigation will show the roots of the charges before them. This evidence may also help the court in determining questions of relevance and foundation for additional testimony and documents related to these materials. Therefore, the investigation and seizure process are relevant.

Evidence of the PIU investigation is also relevant to proving an element of the charged crimes. The defendants are charged with conspiracy to commit healthcare fraud, and healthcare fraud. The conspiracy charge requires the government to prove that the defendants acted "knowingly, intentionally, and unlawfully" and healthcare fraud requires the government to prove that the defendants' schemes and artifices to defraud Wyoming Medicaid were "knowingly and willfully" executed. (Doc. 1 at 6.) The government will provide evidence showing that, following the PIU visit in December 2015, defendants Barrus and Bennett ceased billing Wyoming Medicaid through NWTC for H0047, H2015, and H2021 claims altogether, and changed their billing practices for H0005. Thus the visit from the PIU and the defendants subsequent actions tend to show that these defendants knew that their conduct was unlawful and, as proof of their guilty consciences, ceased further criminal claims submissions.

Defendants Barrus and Bennett also state that evidence of the PIU investigation should be excluded from the trial because it is "more unfairly prejudicial then probative under W.R.E. [sic] 403." (Doc. 196 at 3.) However, the defendants do not cite the legal standard for evaluating their 403 claims, and do not attempt to weigh their claims of prejudice against any potential probative value of the evidence that they seek to limit. For this reason alone, the defendants do not meet their burden, and the motion should be denied.

Moreover, as noted above, the evidence is in fact relevant. Thus the defendants need to show not only prejudice but *unfair* prejudice as to all of the civil forfeiture and administrative

overpayments for the court to exclude all such materials. The defendants do not show how their concerns outweigh the jury's interest in receiving a full picture of necessary facts, this court's interest in hearing necessary foundation for documents and testimony, and evidence of the defendants' mental state. The defendants also do not address lesser remedies such as a corrective instruction from the court. Indeed, the defendants do not argue how their claims of prejudice outweigh any probative value for the evidence they seek to exclude. Therefore, the defendants have not met their burden.

The defendants correctly note that the government does not now intend to produce evidence regarding the resolution of the civil forfeiture, or administrative overpayments as part of its case in chief. The government reserves the opportunity to do so, however, if the defendants make such evidence relevant through cross-examination or their presentation of evidence. Because the defendants make no showing as to why their ability to object at trial is insufficient to remedy their concerns, the government should retain that opportunity. For instance, the defendants may make the civil investigations and their resolutions relevant by calling members of the board of directors to testify and questioning them about the board's liability. If such testimony is offered, the government should not be precluded in limine from appropriate cross-examination. Rather the court should address objections to that testimony in the proper context.

For these reasons, the government asks the court to deny defendants Barrus and Bennett's motion in limine regarding civil proceedings and administrative actions, ECF Docket No. 196.

### B. The court should deny the defendants motion in limine regarding defendants' salaries, bonuses, personal finances, and benefit packages

Defendants Barrus and Bennett next ask the court to preclude "any discussion regarding Defendants' salaries, bonuses, personal finances and benefit packages, with the limited exception

7

of the salaries/bonuses specifically relevant to the remaining Counts 3, 4 and 6 of the Indictment." (Doc. 198 at 1.) As explained below, the salaries, bonuses, and benefits paid by NWTC to the defendants are relevant to prove the defendants' motive, and the defendants fail to show this evidence is unduly prejudicial. Therefore, their motion should be denied.

The defendants first allege that evidence of their financial transactions is irrelevant because the board made all financial decisions. (*Id*. at 2.) While they may intend to offer testimony or argument to this effect, this claim cannot be established without the upcoming trial. The government maintains that it was the defendants' Medicaid fraud scheme that ultimately brought Medicaid funds into the treatment center, and (as officers of NWTC) defendants Barrus and Bennet maintained NWTC's finances, regularly monitored them, and made financial decisions for the corporation. Specific evidence regarding the defendants' salaries, bonuses, finances, and benefits will be necessary to resolve this dispute. As the fact finder, the jury should be given the opportunity "to resolve all conflicting testimony, weigh the evidence, and draw inferences from the basic facts." *United States v. Bush*, 405 F.3d 909, 919 (10th Cir. 2005).

The defendants next allege significant portions of their personal financial information may not be relevant to this proceeding. (*Id*. at 2-3.) However, the defendants do not show how their ability to object (for example, to an errant mortgage application) at trial requires sweeping in limine relief. The Tenth Circuit directs that we avoid broad sweeping generalizations of evidence, and instead requires the defendants to plead "specificity with respect to the evidence to be excluded." *Starling*, 203 F.R.D. at 482. The defendants have not done so, and their motion should be denied.

The defendants attempt to rely on the government's motion in limine regarding Dixon's testimony to support their claim. However, the defendants misconstrue the government's point. The government there argued that it was the *reasonableness* of the defendants' salaries that was

8

irrelevant, not the salaries themselves. (Doc. 198 at 3 (quoting Doc. 172 at 7)). The defendants'

actual compensation, no matter how reasonable, is very relevant to the jury's determination. The

evidence that the government intends to offer at trial will show that the defendants Barrus and

Bennett both made significant salaries as officers of NWTC, in addition to maintaining private

mental health practices. The evidence will also show that it was the defendants who primarily

benefitted from bonuses at NWTC. Therefore, the actual salary, benefit, and bonus information is

relevant to establishing the defendants' monetary motive to conspire to commit, and commit

healthcare fraud.

The defendants next argue that this probative value would be "substantially outweighed by

its prejudicial effect and it would run the strong risk of misleading the jury." (Doc. 198 at 3.) The

defendants offer no argument to support this assertion, and thus again fail to meet their burden of

establishing undue prejudice. Because the exclusion of relevant evidence under Rule 403 is an

extraordinary remedy, the court should deny the defendants' request.

Finally, the defendants concede that evidence of specific financial transactions is necessary

to support the government's case in chief regarding Counts 3, 4, and 6. (Doc. 198 at 1, 4.) The

additional financial and benefits evidence is, therefore, further relevant because it helps offer

necessary backstory and context. Precluding evidence of the defendants' monthly salaries would

unnecessarily leave questions for the jury regarding these matters that are likely to lead to

confusion in their absence. Providing the full picture will assist the jury in determining factually

how payments from NWTC to the defendants were effected. Thus these materials are relevant to

a question that the defendants agree the jury will resolve.

For these reasons, the government asks the court to deny defendant Barrus and Bennett's

motion in limine regarding salaries, bonuses, personal finances, and benefit packages.

### C. The court should deny the defendants' motion in limine regarding other Medicaid providers.

The defendants also move for a motion in limine regarding other Medicaid providers. They allege that such materials are "irrelevant, likely misleading and, to the extent there is any probative value, [] substantially outweighed by the danger of unfair prejudice and the prospect of misleading the jury." (Doc. 199 at 1.) The crux of the defendants' argument is that it is improper for the government to compare them to other treatment centers that may offer different services. (*Id.* at 3-4.) The defendants note that the government objects to this limitation.

First, as to Rules 401 and 402, evidence is relevant or irrelevant regardless of the party offering it. The relevance inquiry asks the court to determine whether a material fact is made more or less probable. Defendants Barrus and Bennett's expert designation for Dr. Reamer notes that he has conducted research on social work nationally, but provides no reference to Wyoming. (Doc. 148-1.) His report discusses what "programs, such as Northwest Wyoming Treatment Center" typically include (*Id.* at 3), and discusses "widely embraced national standards." (*Id.*, at 6.) The defendants' alternative advocacy regarding relevant evidence here is therefore illogical. If comparing NWTC's program to other Wyoming substance abuse treatment providers is not relevant, comparing NWTC to other substance abuse centers nationally should be even less so. To the extent that the Court grants the defendants' motion as to other Wyoming Medicaid providers, the government requests the limitation apply to both parties. Indeed, the government does not intend to offer such comparison evidence in its case in chief. Rather, it is the materials presented by Dr. Reamer or other similar argument by the defense that could make the comparisons relevant for cross-examination or rebuttal. If the defendants present this evidence, the government should be given the opportunity to respond in kind.

10

The defendants also argue that comparisons presented to the grand jury did not include other similarly situated providers. (Doc. 199 at 2.) This argument relies on evidence which would need to be put before the court, and therefore relates to the weight and credibility of the evidence, not its admissibility. Wyoming Medicaid's list of excluded Medicaid services did not differentiate between whether the excluded services was inpatient, outpatient, adult, or adolescent. *Rules*, Wyo. Dep't of Health, Medicaid, ch. 13, § 9 (Nov. 19, 2002) (superseded April 07, 2015). Comparison claims may be returned from like providers with the same taxonomies. Wyoming Medicaid excluded claims for education; day care; record-keeping time; recreation and socialization services; residential room, board, and care; support groups such as AA/NA; and vocational services. *Id*. Thus, while the defendants may not be true analogues to other Wyoming Medicaid providers offering residential care, they also should not be extreme outliers, which such evidence would show. As long as the underlying methods for aggregating the data are reliable (Fed.R.Evid. 901) and based on the knowledge of the summary witness (Fed.R.Evid. 602), the jury should decide how helpful the information is. *Bush*, 405 F.3d at 919, Fed.R.Evid. 1008(c).

The defendants argue that expert testimony would be required to present such claims information. (Doc. 199 at 2.) This is also false. "[I]t does not take an expert to create graphs and summarize data." *In re Furr's Supermarkets, Inc.*, 373 B.R. 691, 703 (B.A.P. 10th Cir. 2007). "When a summary witness simply testifies as to what the Government's evidence shows, he does not testify as an expert witness." *United States v. Pree*, 408 F.3d 855, 869 (7th Cir. 2005). Thus, as to a comparison of available Medicaid data, in the aggregate, an expert designation is not necessary so long as the witness does not comment on its meaning or offer other opinion based on specialized "knowledge, skill, experience, training, or education." Fed.R.Evid. 702. Moreover, the government is not precluded from offering evidence under Rules 702 and 703 in rebuttal.

11

The defendants again fail to demonstrate why a timely objection during trial will not resolve their concerns. Where the government does not plan to adduce materials comparing NWTC to other Wyoming Medicaid providers in its case in chief, an order in limine from the court is unnecessary. Should the government attempt to produce such evidence before the defendants have otherwise sufficiently raised the issue, the defendants can object at that time.

For these reasons, the government asks the court to deny defendants' motion in limine regarding evidence of other Medicaid providers' practices. Should the court grant the motion, the government asks that it be evenly applied to limit Dr. Reamer's testimony about other substance abuse treatment providers.

### D. The court should deny the defendants' motion in limine regarding the total billed amount to Wyoming Medicaid.

Finally, the government asks the court to deny the defendants' motion in limine regarding the amount of fraud committed by the defendants. The defendants claim to "struggle to understand" how the government will prove that they submitted bills for $8.6 M and were paid $8.5 M for their fraudulent claims over the course of six and a half years. (Doc. 201 at 2.) They also falsely allege that the government "knows or with a minimal diligence would know" that the allegation as to this amount is unsupported by the evidence. (*Id*. at 2-3.) Importantly, however, the defendants concede that the government can claim that the defendants' fraud scheme caused Wyoming Medicaid to pay $8.5 M when that fact is based on the evidence. (*Id*. at 6, 8.) This is exactly what the government will do.

The available claims data, which has been provided to the defendants, show that during the period of the charged conspiracy and fraud, all three defendants, through NWTC and Condie, caused a total of approximately $9.29 M in claims to be submitted to Wyoming Medicaid using

codes 90804, 90806, H0001, H0005, H0006, H0031, H0047, H2015, H2019, H2021, T1007, and T1012. These claims caused Wyoming Medicaid to pay more than over $9.17 M. As to the charged codes H0005, H0047, H2015, and H2021, the defendants caused Medicaid to be billed $8.62 M and to pay $8.52 M. Thus the government has not alleged that every claim submitted by the defendants was false—just every H0005, H0047, H2015, and H2021 claim.

H0005 was defined by Wyoming Medicaid as group counseling by a clinician. H0047 was defined as community-based individual therapy. H2015 paid for Individual Rehab Services. H2021 was only billable by a licensed psychologist or mental health group, which NWTC never was, and was defined as community-based individual therapy. As alleged in the indictment, these Defendants caused false and fraudulent bills to be submitted to Wyoming Medicaid when they knew that the participants had not engaged in the required substance abuse treatment defined by these codes. (Doc. 1 at 3.) The evidence will show that the non-covered activities—sleeping. classroom and remedial education, TV, video games, and general socialization and recreational activities—occurred as part of every participant's schedule every day, week, and month of the NWTC program. The evidence will include off-site recreational activities such as playing basketball, exercising, and lifting weights fraudulently billed as H0005 substance abuse treatment. Activities such educational groups, and group off-site activities like going to the movies, playing paintball, swimming, rafting, fishing, hiking, and stacking hay, were fraudulently billed using code H0047. NWTC billed for daily group socialization, free time, watching TV, playing video games, watching other clients play video games, and sleeping as individual services under H2015. And, as to H2021, the defendants caused Gibson Condie to submit those codes to Wyoming Medicaid as if they were provided by Condie in the community when they were provided by the defendants or their staff, some of whom were not licensed, in the NWTC facility.

13

The defendants then either personally or through their staff aggregated these claims by span billing. Span billing is a process by which providers aggregate the total hours recorded on the participants' individual clinical records and bill for a span of days, often a week or month at a time. Here, the defendants and their staff aggregated the total time spent each month for each client using NWTC progress notes and supervision sheets. Once the total aggregate code amount was reached, the defendants either personally or through Condie billed the aggregate total to Wyoming Medicaid for the entire month as if all services for the month were covered Medicaid services. To the extent that any individual instance of H0005, H0047, H2015 or H2021 service was provided in accordance with Medicaid's rules, it was bundled with daily, weekly, and monthly non-covered services. This made every claim to Wyoming Medicaid for H0005, H0047, H2015, and H2021 from April 2009 through November 2015 a false submission. Thus, between April 2009 and November 2015, the defendants caused to be submitted to Wyoming Medicaid false and fraudulent bills under procedure codes H0005, H0047, H2015, and H2021 for alleged substance abuse and mental health treatment in the amount of approximately $8.6 million for which Medicaid paid approximately $8.5 million. The grand jury charged the case as such, and the government should be allowed to present evidence necessary to prove the indictment.

The defendants also allege that the government must prove this loss amount beyond a reasonable doubt. (*Id*. at 3-6.) Because Wyoming Medicaid's loss amount is not an element of the offense, the defendants' argument is without merit.

"Elements of a crime must be charged in an indictment and proved to a jury beyond a reasonable doubt. Sentencing factors, on the other hand, can be proved to a judge at sentencing by a preponderance of the evidence." *United States v. O'Brien*, 560 U.S. 218, 224 (2010). A fact that increases the mandatory maximum sentence is also an element that must be submitted to a jury

14

and proved beyond a reasonable doubt. *Id*., (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)) *cf. United States v. Ellis*, 868 F.3d 1155, 1169 (10th Cir. 2017) (quoting *Alleyne v. United States*, 570 U.S. 99, at 102 (2013) (factors increasing the mandatory minimum are also elements)).

To prove the charged healthcare fraud conspiracy, the government must prove that: (1) two or more persons agreed to carry out a scheme to defraud Wyoming Medicaid; (2) the agreed-upon scheme involved false or fraudulent pretenses, representations, or promises that were material; (3) the defendant knew the essential objective of the conspiracy; (4) the defendant knowingly and voluntarily involved himself in the conspiracy; (5) the defendant acted knowingly and willfully with the intent to defraud; and (6) there was interdependence among the members of the conspiracy. *United States v. Wright*, 848 F.3d 1274, 1279 (10th Cir. 2017) (bank fraud conspiracy requires "intent to defraud" instruction); Pattern Crim. Jury Instr. 10th Cir. 2.19, Pattern Crim. Jury Instr. 10th Cir. 2.87 (2018).

> [T]o establish health care fraud under § 1347, the Government must prove beyond a reasonable doubt that the defendant (1) devised a scheme or artifice to defraud a health care benefit program in connection with the delivery of or payment for health care benefits, items, or services; (2) executed or attempted to execute this scheme or artifice to defraud; (3) acted knowingly and willfully with the intent to defraud; and (4) the scheme to defraud employed false pretenses, representations, or promises. To establish that a defendant knowingly and willfully acted with intent to defraud, the Government must prove that the defendant acted with knowledge that his conduct was unlawful.

*United States v. Rufai*, 732 F.3d 1175, 1189–90 (10th Cir. 2013) (cleaned up). The value of the loss is not an element of either the charged conspiracy or healthcare fraud, so it need not be submitted to the jury and proven beyond a reasonable doubt.

Finally, defendants Barrus and Bennett allege that the government's "throwing around figures of $8.6 or $8.5 million dollars" will prejudice them. (Doc. 201 at 3.) As described above,

15

this is far from the government's case. The government intends to present the evidence that shows these defendants conspired to defraud, and ultimately defrauded, Wyoming Medicaid in the amount of $8.5 million over the period of 6.5 years. To the extent that this statement and accompanying evidence are indeed presented, the government should be permitted to lay foundation for and otherwise comment on the same and the defendants cite no precedent otherwise.

## IV. CONCLUSION

For the foregoing reasons the United States moves that this court deny defendants Barrus and Bennett's motions in limine filed as ECF docket numbers 196, 198, 199, 201.

Respectfully submitted this 14th day of February, 2022.


L. ROBERT MURRAY
United States Attorney


By:   */s/ Travis J. Kirchhefer*
      Travis J. Kirchhefer
      Special Assistant United States Attorney


By:   */s/ Eric J. Heimann*
      Eric J. Heimann
      Assistant United States Attorney

## CERTIFICATE OF SERVICE

I certify that on this 14th day of February, 2022, I served true and correct copies of the foregoing motion upon all counsel via CM/ECF.

_____/s/ Corine Aranda_____
U.S. Attorney's Office